STATE v. SIDNEY MATTHEWS and FRANK HUMPHREYS.

*Murder—Evidence—Character of Deceased—Excusable Homicide—*
*Presumption of Malice—Judge's Charge.*

1. On a trial for murder it was in evidence that the defendant H charged deceased with perjury, adding, "I can prove it. Come up here, M." Whereupon the defendant M stepped up, when deceased struck him, knocked him on his knees and stamped at him; M rose up and deceased immediately thereafter staggered back mortally wounded, one witness stating that both M and deceased had knives in their hands. It was further in evidence that M was small, crippled and one-eyed, and deceased was a strong man;
   *Held,* that evidence of the character of deceased for violence was admissible.

2. The evidence as to H being, that he was cursing deceased, said deceased had sworn to a lie and called on M to prove it, and when deceased knocked M down, H put his hand in his pocket and said he would "shoot the d—d rascal," or "stand back from the——, I am going to shoot him," when his wife caught hold of him and prevented him;
   *Held,* that what H said or did before the fight between deceased and M was not intended to provoke such fight, had nothing to do with it, and ought to have been excluded.

3. To render the act of killing excusable on the ground of self-defence, the defendant should not only have reasonable ground to apprehend, but also should actually apprehend, either that his life was in imminent danger or that deceased was about to do him some enormous bodily harm, and there must be a necessity for taking life from the fierceness of the assault, &c.

4. In this case the evidence being as above stated; *Held,* that there was no evidence from which the jury might reasonably infer that M intended or was willing to engage in a fight with deceased.

5. *Held further,* that the circumstances of the case rebutted the presumption of malice raised from the fact of killing, and it was error in the Judge below to submit the question of murder to the jury, the question as to whether the presumption of malice had been rebutted or not being a question of law.

6. It is the duty of a Judge to state clearly the particular issues arising

on the evidence and to instruct the jury as to the law applicable to every state of the facts which upon the evidence they may reasonably find to be the true one.

(*State* v. *Turpin*, 77 N. C. 473 ; *State* v. *Hildreth*, 9 Ire. 429; *State* v. *Craton*, 6 Ire. 164; *State* v. *Collins*, 8 Ire. 407; *State* v. *Sizemore*, 7 Jones 206; *State* v. *Walker*, N. C. T. R. 231; *State* v. *Dunlop*, 65 N. C. 288, cited and approved.)

INDICTMENT for Murder, removed from Yadkin and tried at Fall Term, 1877, of FORSYTHE Superior Court, before *Cox, J.* The defendants were charged with the killing of one Costin D. Butner. The evidence was substantially as follows; Frank Matthews, a witness for the State, testified that the homicide was committed opposite the defendant Humphreys' house on the Yadkinville road; that he was at his home on the afternoon of the day of the killing, about 300 yards from the road, and upon his hearing loud cursing he went over and saw the deceased, defendants, and John Carter, Cannady Carter, and defendant Humphreys' wife. He stopped in about 75 yards of them and sat down. Humphreys was cursing Butner,—said he had sworn d—d lies against him at the Court House. Butner said he had not. Humphreys replied and said he was a d—d liar, and he could prove it by Matthews. Witness also stated that thereupon *deceased advanced three steps* and struck Matthews a back-handed lick, knocked him on his knees, kicked him and stamped at him ; about the time Matthews rose, the deceased commenced falling backward, rose a second time, staggered, fell and died in a short time. Humphreys put his hand behind him and said he would shoot the d—d rascal; and his wife, screaming, threw her arms around him and held him, until the deceased fell. When Matthews was down, partly on his side, he was stamped about his legs and body. Matthews raised the deceased's head after he had fallen, rubbed it with camphor, and said "go for the doctor, quick."

Enoch Matthews, for the State, testified among other things that when he got there he heard Humphreys say to the deceased, " d—n you, I'll shoot you, got it laid up for you, you swore d—d lies against me at the Court House, I can prove it, come up here Sidney Matthews." Matthews thereupon *stepped up*, and the deceased struck him and he fell partly on his hands; deceased kicked him and stamped at him, but did not touch him (as witness thought). While down, Matthews said " fellows don't let him kill me," and Humphreys said " stand back from the son of a bitch, I'm going to shoot him;" and motioned as if he was getting a pistol. (At this time his wife interfered as testified to by the former witness.) Matthews rose half up and as he rose, deceased fell at his feet and rose and fell again and died in a short time. Matthews then said " don't let him lie here and die this way, but try to do something for him," and rubbed his head, &c., as testified to above. Matthews moved in front of the deceased, when told by Humphreys to come up and prove he lied, and stopped long enough to speak before deceased struck him; but witness heard no words pass, and saw no knife.

Henry Jarrett, for the State, testified to substantially the same state of facts. Upon the cross-examination of this witness, it was proposed to prove the declarations of Humphreys after the homicide, as explaining his acts; but upon objection by the Solicitor, they were excluded.

Frank Munday, for the State, testified, that some one, two or three months before the homicide, he was with the defendants and heard Humphreys say that deceased was a d—n rascal, to which Matthews assented. It was in evidence that Matthews was a peaceable and quiet man, small, one-eyed and a cripple; that Humphreys was a small man, and deceased was a large and powerful man, wore No. 10 boots and weighed about 215 pounds; and that defendants and deceased had lived together on the same plantation and

were well acquainted. The counsel for the defendants thereupon proposed to show the character of the deceased as a violent and dangerous man; but upon objection the testimony was excluded.

A. C. Snipes, for the State, testified "that at a sale near the place of the homicide and an hour or two before its occurrence, Humphreys, upon his (witness) proposing to sell him some plows, introduced the name of the deceased who was not present, and spoke harshly of him; that they separated, and Humphreys returned in a short time with Matthews, and commenced cursing Butner again; he said he had cursed him to his face, and called on Matthews to confirm his statement; he also said that the next time he fought Butner, he would kill him, and that he had rather see him die than to see witness eat a biscuit;" that he had promised to go home with deceased that night, had left the sale before deceased, and expected deceased to overtake him; but upon his failing to do so, he returned and found him dead in the road; and that the wound was six inches below the groin. This witness also said upon cross-examination, that he had made the above statement before the Coroner's jury, and thereupon the defendants introduced members of said jury, whose testimony tended to contradict the evidence of said witness, in that, he stated upon the inquest, that what he knew was hearsay. The defendants then proposed to impeach his character by showing "that in Yadkin County where he lived, he had a general character for having been discharged from a certain mill for taking too much toll;" but upon objection, this was excluded.

Cannady Carter, for the State, testified that John Carter and the deceased were walking up the road quarrelling, and when they got opposite Humphreys' house, Matthews and Humphreys came out. Something was then said about $10, and the deceased and Humphreys began to quarrel, the deceased speaking in a loud and angry tone. During the altercation and in reply to his wife's request

that he should leave and go to the house, Humphreys said, "I told you I am not afraid of him." As Matthews was moving as if passing deceased, he knocked him down. Don't think that Humphreys made any effort to get at the deceased while Matthews was down. The deceased after knocking him down, stood still and was doing nothing and as Matthews rose he passed his hand out toward deceased, and when he got up they stood confronting each other with drawn knives when the deceased soon fell.

The defendants' counsel requested the Court to give the following special instructions ;—

1. If the jury believe that Matthews had reasonable ground to apprehend that the assault of the deceased was made with felonious intent, that he was not bound to retreat, but he had a right to kill in self-defence.

2. That although the jury may believe that Matthews was willing to engage in the difficulty between the deceased and Humphreys, yet if they should believe that Matthews after being stricken down was unable to retreat, and had reasonable ground to apprehend that he was about to receive great bodily harm from the deceased, and stabbed the deceased in consequence thereof, that this of itself would not make him guilty of either murder or manslaughter; and the question of reasonable ground for such apprehension was solely a question for the jury to determine.

3. Ordinarily in trials for homicide, the killing by the prisoner being found or admitted, the law implies malice, and the burden lies upon the prisoner to show to the satisfaction of the jury, that the killing was done under circumstances reducing the offence to manslaughter, or excusable or justifiable homicide; but when circumstances which come out from the examination of the State's witnesses tend to establish such defence, then it is the duty of the jury to consider all the evidence, and if they are not satisfied of the guilt of the accused beyond a reasonable doubt, they should acquit.

The Court read the above instructions to the jury, and stated that while they embodied correct principles of law, yet it would lay down the following rules for their guidance *in this case*, and after defining the grades of homicide, said; The fact of killing being first proved, all the circumstances of necessity or infirmity are to be satisfactorily proved by the accused, unless they arise out of the evidence against them, for the law presumes the fact to have been done in malice until the contrary appears. The jury are therefore to consider all the evidence and circumstances of the homicide and unless satisfied, &c. And in passing upon the facts, they should consider whether, if not guilty of murder, they or either of them may be guilty of manslaughter, or whether they acted in self-defence ; that if it appeared from the circumstances of the case, the manner of the assault, the strength of his assailant, or the like, that Matthews had reasonable ground to apprehend that his life was in imminent danger, he was justified in killing his assailant, but there must be a necessity then for taking life from the fierceness of the assault, &c., before he could be excused on the ground of self-defence ; that a bare fear that deceased intended to kill him, unaccompanied by some overt act, would not justify Matthews in killing him, for there must be an actual danger at the time, or reasonable ground to fear that there was ; and of this, the jury and not the prisoner must be the judge ; that if they engaged in a sudden combat, becoming heated thereby, and Matthews drew a deadly weapon, or used one in his hands, having no intent to use it when the fight commenced, and slew deceased, he is guilty of manslaughter ; and so, if he had merely been kicked or struck by the deceased who was not endeavoring to pursue the combat further ; or if it all occurred in rapid succession. But if deceased was pursuing his advantage so as to place Matthews in imminent peril of his life or great bodily harm, he might slay his adversary in self-defence.

As to Humphreys; If he was present and did or said any-thing calculated and intended to make known to Matthews that he would help if need be by taking part in the fight, or keeping others off, or if he agged him on, he would be guilty of aiding and abetting, and equally guilty with Matthews. You will apply the facts, &c., and give the defendants the benefit of all reasonable doubt and say whether one or both of them be guilty or otherwise; and if guilty, of what. The jury returned a verdict finding each defendant guilty of manslaughter.   Judgment.   Appeal by defendants.

*Attorney General* for the State.
*Messrs. Watson & Glenn*, for the defendants.

RODMAN, J.   There is a difference in the cases of these two defendants, and they will require to be separately con-sidered.   But there are some observations applicable to both.   Both were indicted for the murder of Butner, and both were convicted of manslaughter.

The case apparently professes to set forth all the evidence given upon the trial.   But probably it omits some that was given, because the instructions asked for by the counsel for the defendants, and those given by the Judge, seem to be founded on the assumption of certain facts, which do not appear, or at least do not directly appear, in the evidence set forth.

1.   We will first consider the case of Matthews.   The facts in evidence as they relate to him, stated generally, were these :   Butner (the deceased) and the two defendants and some others, were in a public road.   Humphreys charged Butner with having sworn to lies against him and said he could prove it by Matthews.   According to one witness (Frank Matthews) he said to Butner, " Damn you I will shoot you, you swore damned lies against me, and I can prove it.   Come up here Sidney Matthews."   This witness

34

states that " Matthews then stepped up. Deceased advanced three steps and struck Matthews a back-handed lick, knocked him on his knees and stamped at him. When Matthews was down, he was partly on his side and the stamping was about his legs, and then his body."

Enoch Matthews testified substantially as above, except that he does not say that deceased advanced upon the defendant Matthews. He says that as defendant Matthews stepped up, deceased struck him and he fell partly on his hands, when deceased kicked him, &c. Matthews rose and about that time deceased commenced falling backward, rose a second time, staggered and fell, and died in a short time. No witness saw any blow with a knife given.

Carter, a witness, says that when Matthews rose to his feet, he saw him and the deceased standing confronting each other with knives in their hands, when deceased soon fell, and in a few minutes died. He died from a wound inflicted by a knife in his thigh about six inches below the groin. It is evident from the testimony that if Matthews gave the wound, as the jury must have believed that he did, it was given while he was on his knees, or otherwise prostrate on the ground.

The Judge allowed it to be given in evidence that he was small, crippled and one-eyed, and that the deceased was a strong man, but refused to allow the defendants to prove his character for violence. The defendants excepted, and we think that the Judge should have received the evidence, as coming within the exception to the general rule against such evidence, established in *Turpin's* case, 77 N. C. 473.

The issue made by the evidence in this case was, did Matthews give the wound in self-defence? Our opinion on this point would entitle the defendants to a new trial. But other questions are presented in the case which may again occur upon a second trial, and upon which the defendants are entitled to our opinion.

The defendants prayed for certain instructions which the Judge read to the jury, and stated that while they embodied correct principles of law, yet he would lay down the following rules for their guidance in this case, &c. This language was a virtual refusal to give the instructions. In this we think the Judge was right, because they were less favorable to the defendants than what they were entitled to have.

The first of these instructions is defective, rather than positively erroneous. It should have added to the hypothesis that Matthews " had reasonable ground to apprehend," &c., the further words, " and *did* apprehend," &c. It might also advantageously have used some other equivalent words, in the place of " felonious assault," which although strictly correct, the jury were not likely to understand.

The second is more objectionable. It seems to assume that there was evidence from which the jury might reasonably and justifiably find, that Matthews " was willing to *engage in the difficulty* between the deceased and Humphreys," whereas we do not see in the case as presented to us any evidence of an intention on the part of Matthews to engage in the fight to which Humphreys had challenged the deceased. It is true he " stepped up " when he was called on by Humphreys to prove what he had said, but whether with the intention to affirm or to deny the statement of Humphreys does not appear. Certainly the mere fact that he stepped up or as one witness says, seemed to be passing deceased when deceased struck him, would not tend to prove an intention to get into a fight with the deceased, and the law presumes in favor of every man's innocence, and requires a criminal intent to be proved.

Strictly speaking the defendants, in order to make evidence of the violent character of the deceased competent, should have offered to prove that it was known to Matthews. But there was some evidence of that in the fact

that they lived in the same neighborhood and were acquainted.

We proceed now to consider the instructions given by the Judge in lieu of those asked for. After correctly defining murder, manslaughter and excusable homicide, he says to the jury in substance, that when a homicide is proved, the law presumes malice, but the presumption may be rebutted by circumstances appearing in evidence whether put in on the part of the State or of the defendants. To this there can be no exception. The error of the Judge in this part of his charge was omission only. But we think in a case like this he was required to go further than he did, and to inform the jury that if they believed the witnesses who were uncontradicted, that the circumstances in evidence did rebut the presumption of malice. As malice is a presumption which the law makes from the fact of killing, it must necessarily be a matter of law what circumstances will rebut the presumption. The jury must pass on the existence of the facts which constitute the circumstances, but the Judge should instruct them, as matter of law, that if certain facts which the evidence tends to establish have been proved to their satisfaction, the presumption of malice is rebutted and they must acquit the defendant of murder. *State* v. *Hildreth*, 9 Ire. 429. Whether the presumption has been rebutted or not is a question of law just as legal provocation, sufficient cooling time, deadly weapon, reasonable time, negligence, &c., are. *State* v. *Craton*, 6 Ire. 164; *State* v. *Collins*, 8 Ire. 407; *State* v. *Sizemore*, 7 Jones 206.

In *State* v. *Hildreth*, 9 Ire. 429, the Court say: " It is the undoubted province and duty of the Court to inform the jury upon the supposition of the truth of the facts as being agreed or found by the jury, what the degree of the homicide is. Foster Cr. L. 255; *State* v. *Walker*, N. C. T. R. 231. If it were not so, there would be no rule of law by which a killing could be determined to be murder, but the whole

matter of malice or alleviation would fall to the discretion and decision of the jurors in each particular case, and there would be no mode of reviewing it so as to reverse the decision though erroneous. There could be no tyranny more grievous than that of leaving the citizen to the prejudices of jurors, or the discretion of Judges, as to what ought to be deemed an offence, which should or should not deprive him of his life. The only security for the accused is for the law to define *a priori*, what shall constitute a crime, and in the case of capital punishment, when it shall be inflicted.

It is one of the praises of our law that such have always been its provisions. The presiding Judge therefore did not transcend his power, but performed simply his duty in directing the jury upon the point whether the killing here amounted to murder or manslaughter taking the facts to be as deposed to by the witnesses."

The Judge in this case left the question of murder an open one for the jury, and without disregarding his instructions they might have found the defendant guilty of that crime, although there was no evidence of express malice, and the legal presumption was rebutted by the testimony of every witness as to the sudden and unexpected beginning of the affray. It cannot be said because the jury found the defendant guilty of manslaughter only that he was not prejudiced by the omission of the Judge. The true question was between manslaughter and homicide in self-defence. The attention of the jury was distracted from that by their being required to pass on the question of murder which was contradicted by all the evidence, and the defendant was compelled to present his defence to them, burdened by a weight of accusation from which he ought to have been relieved by the instruction of the Judge.

The instructions were erroneous in other particulars. The Judge said : "If it appeared from the circumstances of the case, * * * that Matthews had reasonable ground

to apprehend that' *his life was in imminent danger*, he was justified in taking the life of his assailant, but there must be a necessity for taking life from the fierceness of the assault, &c., before he could be excused on the ground of self-defence." The Judge omitted here to say that Matthews must have believed in the reality of the danger, and he omitted also a much more important portion of the rule which he undertook to lay down. It is said in all the authorities, and cannot be doubted, that if a man who is assailed believes, and has reason to believe, that although his assailant may not intend to take his life, yet he does intend and is about to do him *some enormous bodily harm*, such as maim for example, and under this reasonable belief he kills his assailant, it is homicide *se defendendo* and excusable. It will suffice if the assault is felonious. Foster 274. No doubt the omission of this qualification of the rule was simply inadvertent. We think there are other expressions of the Judge which were incorrect as not being applicable to the evidence, and likely to be prejudicial to the defendants. But it is unnecessary to consider them.

2. We pass now to the case of Humphreys.

As to him the Judge told the jury that, " if he was present and did or said anything calculated and intended to make known to Matthews, that he would help if need be, by taking part in the fight, or keeping others off, or if he agged him on, he would be guilty of aiding and abetting, and equally guilty with Matthews. "

This is perhaps a correct statement of an abstract principle of law. We are not called on to decide upon that. The error as we think, is, that it was too general and did not with sufficient particularity furnish the jury with a rule which they could apply to the facts as they might find them to be. The evidence as to Humphreys so far as it is material, may be briefly stated thus : When' first seen by the witnesses he was cursing deceased ; said he had sworn.

to a'damned lie, and called on Matthews to prove it. When deceased knocked Matthews down, Humphreys put his hand in his pocket and said he would shoot the damned rascal, when his wife seized and held him until deceased fell. Another witness testified in substance that before Humphreys called Matthews up, he said to deceased, " Damn you, I'll shoot you, &c.," and that when Matthews was down, Humphreys said, " Stand back from the son of a bitch ; I am going to shoot him," when his wife held on to him &c. He did.not shoot.

The Judge left it an open question to the jury, whether or not this defendant was guilty of murder. If he erred in this respect as to Matthews, he of course erred as to Humphreys. As he did not commit the homicide, there was no presumption of malice in him to be rebutted. To make him guilty of murder there must have been a concert between him and Matthews to kill the deceased, of which there is no evidence, and which the jury have negatived. It was therefore quite as unfair to him as it was to Matthews, to compel him to argue before the jury against this accusation.

In another respect the charge of the Judge presented the case of this defendant to his prejudice. He had challenged the deceased to fight *with him.* But there is no evidence tending to prove that he intended or expected the fight which took place, that is, one between Matthews and the deceased. All the evidedce shows that this fight was sudden and unexpected. If Matthews acted in self defence, of course Humphreys was guilty of no crime. The instructions assume that Matthews was guilty of some. crime, either murder or manslaughter, and put to the jury the issue whether Humphreys abetted him. If the Judge had said, if you find Matthews guilty of manslaughter, then, if *during the fight and before the fatal wound was given,* Humphreys did or said anything &c., his instructions would have been

unobjectionable so far as they went. But they would even then have been imperfect and unfair, in not calling the attention of the jury to the imperfection of the evidence as to the participation of Humphreys. What he said or did before the fight began must be excluded from consideration, for although it was calculated and intended to provoke a breach of the peace between him and the deceased, it was neither calculated nor intended to provoke a fight between Matthews and the deceased. What he said after the fatal wound was given must also be excluded, because it could not encourage, aid or abet Matthews to give it. The testimony as to the conduct of Humphreys while the fight was going on, is, that when Matthews fell, Humphreys put his hand behind him and said he would shoot the damned rascal, when his wife seized and held him until deceased fell. Another witness says that Matthews while he was down, said, " Fellows don't let him kill me, " when Humphreys said, " stand back from the son of a bitch, I'm going to shoot him," when his wife seized him, &c.

What Humphreys said was calculated to encourage Matthews, and the jury might not unreasonably have found that it was said during the fight and before the fatal wound was given, and that Humphreys was a principal in the manslaughter. But they might also have found that Humphreys reasonably believed that Matthews was about to be feloniously killed, and interfered to the extent that he did to prevent a felony, as he lawfully might. We cannot say which of these views the jury might have taken. The error of the Judge consisted in his failing to present particularly to the jury the law applicable to these hypothetical cases, which are the only ones that could arise and which did arise, on the evidence, and in leaving it to them in a general way, and without any particular instructions, to find whether Humphreys did or said anything to encourage Matthews.

It will be seen from the manner in which we have reviewed the instructions of the able and learned Judge who presided at this trial, that in our opinion a Judge who presides at a trial in which human life is at stake, does not fully perform the duties which his office imposes on him, by stating to the jury, however correctly, principles of law which bear more or less directly but not with absolute directness upon the issues made by the evidence in the case. To do that only, is easy and almost mechanical. We think he is required in the interest of human life and liberty, to state clearly and distinctly the particular issues arising on the evidence, and on which the jury are to pass, and to instruct them as to the law applicable to every state of the facts which upon the evidence they may reasonably find to be the true one. To do otherwise, is to fail to "declare and explain *the law arising on the evidence,*" as by the Act of Assembly he is required to do. C. C. P. § 237.

To do this requires the exercise of a cultivated intelligence, and to do it in a complicated case in the necessary haste of a jury trial, so as to stand subsequent examination, is one of the highest efforts of the mind. The ablest Judges, although assisted by able counsel, do sometimes fail, and when that appears, it is the imperative duty of a Court of appeals to order a new trial. *State* v. *Dunlop,* 65 N. C. 288· An application was made to this Court to reduce the amount of bail required of the defendants by the Court below after their conviction, as being excessive. The decision granting them a new trial renders any decision on the application unnecessary.

Error.

PER CURIAM. *Venire de novo.*