## STATE v. LIPSCOMB.

(Filed April 5, 1904).

1. HOMICIDE—*Evidence—Premeditation and Deliberation*.

In this prosecution for murder there is sufficient evidence of premeditation and deliberation to be submitted to the jury.

2. HOMICIDE—*Malice—Presumptions*.

It is not error to instruct that, defendant having admitted that he killed deceased with a deadly weapon, there was no evidence sufficient to rebut the presumption of malice, and that defendant was guilty at least of murder in the second degree.

3. HOMICIDE—*Premeditation—Harmless Error*.

Where the jury found that defendant killed deceased with premeditation, an instruction that defendant under certain circumstances was guilty at least of murder in the second degree, if erroneous, was not prejudicial.

4. JURY—*Infants—Appeal*.

The setting aside of a verdict because a juror was under twenty-one years of age is discretionary with the trial judge and not reviewable on appeal.

INDICTMENT against Archie Lipscomb, heard by *Judge C. M. Cooke* and a jury, at February Term, 1904, of the Superior Court of GRANVILLE County.

134——44

The defendant was indicted in the Superior Court for the murder of Caswell Merrett, and having been convicted of murder in the first degree appealed.

Mary Merrett, a witness for the State, testified: "I am the wife of the deceased, Caswell Merrett, who was about forty years old. He lived on W. L. Umstead's place in this county. Arch Lipscomb lived about one-quarter of a mile from us. On Friday night, January 10h, it being dark and cloudy, and about one hour after dark, Arch Lipscomb came to our house. He came in. My husband was sitting near the fire-place near the bed, and I was plaiting my hair. My husband was sitting about twelve or fifteen feet from the door. Arch came in and sat down in the corner. Arch and my husband got to arguing about the Scriptures. They did not seem to be angry, and Caswell said something Arch did not like. I do not remember what. Arch jumped up and said if his best friend was going back on him for somebody else, that was all right. And he stepped out of the door at once and came back, and before I had turned my head he had shot. He did not have the gun in the house but got it outside of the door. Caswell was sitting down with his legs crossed, and his head hanging down. He had not gotten up from the chair. It was a shotgun, and the load went into my husband's throat and he died at once without ever speaking. I went up the lane and hallooed for Mr. Umstead, and he came. My husband was still sitting in the chair, but dead. As soon as Arch shot he left there. There was a lighted lamp on the table near Caswell and the shot broke that to pieces. There are two rooms in our house. They had just a religious argument about the Bible; but I never heard my husband making threats. I did not have anything against the defendant, and I have not got anything against him now."

W. P. Wheeler, a witness for the State, testified: "I

arrested the defendant next morning after the killing, and without any word of inducement or threat he told me he killed the deceased. He said the deceased had threatened him and his wife's life and they were afraid of him, and that he carried his gun over and shot him and killed him that night. I never heard that deceased and his wife were 'conjurers' until after the killing. I did not know of any ill-feeling between the parties. The defendant did not try in any way to escape. He was dressed up when I got him and said he was waiting for the officers."                    ,

The defendant, in his own behalf, testified: "I shot and killed Caswell Merrett on the night of January 10th, last. I left home about a half hour by sun to go hunting. I went down on Mr. Williams' land and Mr. Eugene's (Umstead's), and then, when I got to the deceased's house, I set my gun down by the door and went inside the house. Caswell Merrett had before been threatening mine and my wife's' life several times. He said he had given my wife three weeks in the way he was going to do, and that was to kill her, I understood it. I have seen him run up and take hold of her with both hands. I was afraid of the deceased. He and I got to talking together at his house that night, and we both seemed to get mad. I thought he was a conjurer, and I am afraid of a conjurer. It was not my intention to kill the deceased when I left home. I went hunting, I went up and hallooed at his house. He hallooed out and invited me in. I went in. I had been before that time so wrought up on account of the threats he had made that I could not work in my field. We first commenced talking about arithmetic then we got on the Scriptures

"I arrived at the deceased's house about dark and remained about an hour, and then shot him and left immediately. I did not like the way he had been fooling around my wife. It looked like he had been trying to get between

me and my wife. During Christmas my wife was at his house, and she said he caught her in his arms and hugged her. I did not kill any birds that hunt."

Mary Lipscomb, a witness for the defendant, testified: "I am the wife of the defendant. I was at home that afternoon. I was sick in bed, and had been for about a week. Arch left home before night. He did not tell me what he was going out for. The deceased sometimes visited us."

Eugene Umstead, a witness for the defendant, testified: "I live near the parties. My attention was first attracted when a little before 10 o'clock my attention was directed to Caswell Merrett's house by his wife's hallooing. When I reached the house Caswell was sitting up in the chair dead, with his legs crossed and his head fallen to one side, and his hand hanging down by his side."

There was evidence to the effect that the general character of the prisoner is good.

"The Court instructed the jury as to what constituted murder in the first and second degree and manslaughter, and also instructed them fully as to the law of malice, explaining to them the difference between general malice and particular malice, and further instructed them that to constitute murder in the first degree there must exist on the part of the slayer towards the deceased express malice; and that in order to convict the prisoner of murder in the first degree the jury must be satisfied beyond a reasonable doubt that he slew the deceased with particular or express malice, and that he did it with premeditation and deliberation. The Court also called the attention of the jury to the evidence and gave the contentions of the parties."

First exception. There was no exception to the charge of the Court save to the following instruction: "The defendant having admitted that he killed the deceased with a deadly weapon, there was not in evidence any facts of circum-

stances sufficient to rebut the presumption of malice from such killing with a deadly weapon, and that the defendant was at least guilty of murder in the second degree."

The jury rendered a verdict of murder in the first degree. The defendant moved for a new trial for error in the charge as above pointed out by his exception. The motion was overruled and the defendant excepted.

Second exception. "The defendant then moved to set aside the verdict and for a *venire de novo,* on the ground that it had been discovered since the verdict that B. F. Blackwell, one of the jurors in the case, was under twenty-one years of age. The Court found as a fact that the said juror would not be twenty-one years old until next July, and that the fact was unknown to the defendant or his attorney, or the Solicitor of the State, or any other officer of the Court. The Court also overruled this motion of the defendant, and the defendant excepted.

"The Court then pronounced judgment upon the verdict as contained in the record and the prisoner appealed to the Supreme Court, and was allowed to appeal without giving security."

*Robert D. Gilmer, Attorney-General,* for the State.
No counsel for the prisoner.

WALKER, J., after stating the case. There was no exception taken to the charge so far as it related to murder in the first degree. In this respect the instructions of the Court to the jury were full and explicit and sustained by all of the authorities. *State v. Gilchrist,* 113 N. C., 673; *State v. Fuller,* 114 N. C., 885; *State v. Norwood,* 115 N. C., 789; 44 Am. St. Rep., 498; *State v. McCormac,* 116 N. C., 1033; *State v. Gadberry,* 117 N. C., 811; *State v. Covington,* 117 N. C., 834; *State v. Thomas,* 118 N. C., 1113; *State v.*

*Dowden,* 118 N. C., 1145; *State v. Rhyne,* 124 N. C., 847; *State v. Spivey,* 132 N. C., 989; *State v. Cole,* 132 N. C., 1069. There was ample time for deliberation and premeditation by the defendant according to any rule that has been laid down upon the subject. No particular time is required for this mental process of premeditation and deliberation. The question always is whether, under all the facts and circumstances of the case, the defendant had previously and deliberately formed the particular and definite intent to kill, and then and there carried it into effect. This is a question for the jury to determine. *State v. Johnson,* 47 N. C., 247, 64 Am. Dec., 582. The facts of our case are substantially like those in *State v. McCormac,* 116 N. C., at page 1034.

The testimony of the witness W. P. Wheeler, as to the confession made to him by the defendant, was sufficient in itself to warrant the jury in finding the fact of premeditation and deliberation, if they believed it, and, if after weighing the testimony, they inferred and found the fact therefrom; but this testimony was reinforced by that of the defendant himself at the trial, which tended to show, not only premeditation and deliberation at the time of the killing, but preconceived malice and a spirit of revenge.

The exception to the charge of the Court is not well taken. There is no principle better settled in the law of homicide than the one stated by the Court to the jury. When a killing with a deadly weapon is shown or admitted the law presumes malice, and, if nothing else appears, it is murder in the second degree, just as it would have been murder at common law, and would still be, if it were not for the Act of 1893 requiring the State to prove premeditation and deliberation in order to establish a case of murder in the first degree, and in this respect leaving murder in the second degree, as defined by that statute, just as was mur-

der at the common law. If there is no proof of premeditation and deliberation, and there is a killing with a deadly weapon, the law presumes malice and it is murder in the second degree under the statute. *State v. Wilcox,* 118 N. C., 1131; *State v. Capps,* 134 N. C., 622.

This being so, the conviction should be of murder in the second degree, unless the defendant can satisfy the jury of the existence of such facts as will in law rebut this presumption of malice which is raised when the killing is with a deadly weapon. What facts are sufficient to rebut the presumption has always been held to be a question of law which the Court must decide. Whether there is any evidence to rebut the presumption is also a question of law. Whether if there is any evidence sufficient for the purpose, the presumpion is repelled in the particular case, is a question for the jury, under proper instructions from the Court. *State v. Matthews,* 78 N. C., 523; *State v. Capps,* supra; *State v. Craton,* 28 N. C., 164.

To illustrate: If A assault B, giving him a severe blow or otherwise making the provocation great, and B strikes A with a deadly weapon and kills him, or if, on a sudden quarrel, the parties begin the fight without deadly weapons, and, after blows pass, one uses a deadly weapon and kills the other, or if, on a sudden quarrel, the parties fight by mutual consent, at the instant, with deadly weapons, the fight being on equal terms and no undue advantage being taken, the implication of malice in either of the cases stated is rebutted and the law mitigates the offense out of indulgence to the frailty of human nature and adjudges the killing to be manslaughter, *State v. Ellick,* 60 N. C., 452, 86 Am. Dec., 442; and, if the first assault is committed under such circumstances as to induce the party assaulted reasonably to believe that he is about to be killed or to receive enormous bodily harm and he kills his adversary, the

law excuses the killing, because any man, who is not himself legally in fault, has the right to save his own life or to prevent enormous bodily harm to himself. In each of the above cases, it would be the duty of the Court to charge the jury that if they found the facts to be as we have stated them, provided there is evidence to prove the facts, the implication of malice is rebutted and the killing is either manslaughter or excusable homicide, according as the facts may be found by them. Whether the blow was given, or whether the parties fought suddenly or on fair and equal terms, so as to reduce the killing to manslaughter, or whether the assault was committed under such circumstances as to justify the fear or apprehension of the defendant that he was about to be killed or to receive enormous bodily harm, so as to reduce the killing to excusable homicide, are questions solely for the jury. The matter is fully considered in the case of *State v. Matthews, supra.* It was therefore proper for the Court to charge the jury in this case that there was no evidence of any facts and circumstances sufficient to rebut the presumption of malice which arose from the killing with the gun, which of course is a deadly weapon, and the defendant was at least guilty of murder in the second degree. There was no evidence of any provocation, nor was there evidence of any fact which could be considered in mitigation, excuse or justification of the killing. The only question in the case was whether the defendant was guilty of murder in the first degree or of murder in the second degree, the killing having been admitted.

But if there had been error in the instruction to which exception was taken, we do not see how the defendant could have been prejudiced thereby, for the jury found that he killed his victim intentionally and wilfully and with premeditation and deliberation, and it could make no difference, with that fact found by the jury from the evidence, whether

the presumption of the common law as to malice arising
from the use of a deadly weapon had been rebutted or not.
Prejudice could not come from such a charge, if erroneous,
unless the defendant had been convicted of murder in the
second degree and there had been evidence of facts or cir-
cumstances in mitigation or excuse of the killing. We have
said there was none. The principle contained in the instruc-
tion of the Court had no application to the difference be-
tween murder in the first degree and murder in the sec-
ond degree. It related only to the difference between mur-
der in the second degree and manslaughter or excusable or
justifiable homicide.

The motion to set aside the verdict because one of the
jurors was under twenty-one years of age was properly re-
fused, or at least the refusal of it was not reversible error.
The challenge *propter defectum* should be made when the
juror comes to the book to be sworn and before he is sworn,
or the right of challenge will be deemed to be waived. No
juror can be challenged by the defendant after he has been
selected and sworn without the consent of the State, unless
it be for some cause which has arisen since he was chosen
and sworn. *State v. Patrick,* 48 N. C., 443; *State v. Davis,*
80 N. C., 412. In *State v. Lambert,* 93 N. C., 618, a motion
to set aside a verdict for a reason the same as the one now
urged was held to have been properly refused. As indi-
cated by this Court in Patrick's case, *supra,* there is an apt
time for each and every step in all legal proceedings, and
every objection must be made and every privilege claimed at
the proper time, or the party who should thus have asserted
his right will be considered as having waived it. The ob-
jection to the juror in this case was not presented in apt
time. *State v. Parker,* 132 N. C., 1014. It came too late
after verdict, and could then be addressed only to the dis-
cretion of the Court. *State v. Maultsby,* 130 N. C., 664,

and cases *supra*. The exercise of this discretion adversely to the defendant is not reviewable by this Court. *State v. Davis, supra; State v. Perkins,* 66 N. C., 126; *Spicer v. Fulghum,* 67 N. C., 18.

The indictment in this case, though drawn according to the precedent in use before the Act of 1893, is in proper form and charges the offense of murder in the first degree. *State v. Gilchrist, supra.*

We have considered the case and the record with the greatest care and scrutiny, and our conclusion is that there is no error in the rulings of the Court below and none in the record, and it must be so certified.

No Error.