## COURT OF APPEALS.
### Jan. 8, 1907.

## THE PEOPLE *v.* GEORGE H. GRANGER.

### (187 N. Y. 67.)

MURDER—TRIAL—CHARGE—ERRONEOUS INSTRUCTION AS TO DEGREE—
WHEN ERRONEOUS INSTRUCTION AS TO DEGREE IS HARMLESS.

Where, upon the trial of an indictment for murder, the court has charged that in case the jury has reasonable doubt as to the defendant's guilt of murder in the first degree its duty is to determine as to whether he was guilty of murder in the second degree and if in doubt as to that degree, its duty is to acquit, a refusal to charge that it might convict of manslaughter in one of its degrees is erroneous, if there is any evidence bringing the case within the definition of manslaughter in the first degree. Such error, however, is harmless where the defendant is convicted of murder in the first degree, thus indicating that the jury had no doubt as to his guilt of the greater offense; therefore, the failure to instruct that it had the right to convict of manslaughter in the first degree, a lesser degree than that of murder in the second degree, could not have prejudiced the defendant.

APPEAL from a judgment of the Supreme Court, rendered December 5, 1905, at a Trial Term for the county of Dutchess upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*Charles Morschauser* for appellant. Upon the evidence as produced and the charge of the court withdrawing from the jury the consideration of manslaughter in the first degree, the jury could not have rendered any other verdict than that of murder in the first degree; therefore, under section 444, in view of the defendant's evidence, the jury could have found a verdict of manslaughter in the first degree, which right to so

find was withdrawn by the court and withheld from the defend-
ant, and is error. (*People* v. *Young,* 96 App. Div. 33.)

*William R. Lee, District Attorney,* for respondent. The re-
fusal of the court to charge that under the evidence the defend-
ant might be found guilty of manslaughter in either of the
degrees was correct, for the reason that there was no evidence
presented in the case from which the jury might have inferred
that the wound was inflicted in the heat of passion without in-
tent to cause the death of the decedent. (*People* v. *Degarmo,*
73 App. Div. 46; *People* v. *Downs,* 56 Hun, 5; *People* v. *Rego,*
3 N. Y. Cr. Rep. 275.)

HAIGHT, J.:

The defendant was employed by one Charles M. Lutz, a
farmer and dairyman, in the town of Pawling, Dutchess
county, N. Y., through an employment agency in the city of
New York. He remained some five or six days, until the morn-
ing of the 29th day of June, 1905, when he desired to quit and
was thereupon paid off by Lutz, who, at the time, took a roll
of bills from his pocket, which the defendant saw. He then
took his clothing, in a dress-suit case, to the railroad station at
Pawling, where he left it and spent the day in the immediate
locality of the village until evening when he returned to Lutz's
barn and remained over night. The next morning he left the
barn between half-past five and six o'clock, and went down to
a place in the highway midway between the Lutz farm and the
village of Pawling and there remained until Lutz came along
with his team and a low milk wagon carrying nine or ten cans
of milk, which he was taking to the milk factory. He then
stopped Lutz and had some conversation with him with refer-
ence to returning to work, after which Lutz passed on toward
the milk factory at Pawling. The defendant remained in the
roadway, walking back and forth until Lutz returned and then

they had a further talk, and then, as Lutz was about to drive on, the defendant pulled his revolver from his pocket and fired, the bullet striking Lutz back of the ear, passing through the head and lodging in the frontal bone. Lutz immediately fell over backward on to the milk cans and died. The defendant, thereupon, took from Lutz's pocket a watch and about eighty dollars in money and then hurried to the railroad station at Pawling where he got his dress-suit case and took a train for New York. After arriving in New York he procured some refreshments, got shaved, purchased some articles of wearing apparel and then went to the employment agency and asked for a watch that he had left there on pawn. He was then met by an officer who arrested him and took from him the watch, money and revolver.

Upon the trial the People submitted evidence, in substance, that the defendant, after his arrest in New York, made a confession in the presence and hearing of several police officers to the effect that he saw a large roll of bills in Lutz's possession when he took his money out of his pocket to pay the defendant his wages; that shortly after that he determined to rob him, and that instead of returning to New York he remained in the village and vicinity during the day and night for the purpose of finding an opportunity to carry out his purpose; that this was accomplished next morning when Lutz was returning from the milk factory, in the manner already described. Other testimony was presented on behalf of the People to the effect that he was seen by other people a number of times during the afternoon on the 29th and on the morning of the 30th, passing from the barn to the highway, and while he was walking back and forth upon the highway and during the two interviews that he had with Lutz, first when he was going to the milk factory and again upon his return.

The defendant was sworn as a witness in his own behalf and conceded the killing and robbery, but claimed that he was

under the influence of liquor at the time; that he had no intention of killing either Lutz or of robbing him until after he saw that he had killed him, and that then he robbed the body for the purpose of obtaining funds to get away. The district attorney submitted evidence controverting the claim of the defendant that he was intoxicated. The only question, therefore, left for the determination of the jury was the degree of crime for which the defendant should be convicted. The evidence was such as to justify the verdict of the jury that he was guilty of murder in the first degree upon either theory, that the killing was with deliberation and premeditation, or for the purpose of effecting a robbery. The trial judge, in his charge, instructed the jury properly with reference to the question of intoxication, if such was found to be his condition. He also instructed the jury that in case they entertained a reasonable doubt as to the defendant's guilt of murder in the first degree, that then it was their duty to determine as to whether he was guilty of murder in the second degree; and if they entertained a reasonable doubt with reference to his guilt in that degree, then it was their duty to acquit. The defendant's counsel then asked the court to charge that they might convict of manslaughter in one of its degrees. To this request the judge replied that he saw no evidence in the case from which the jury could find the defendant guilty of any of the degrees of manslaughter, and, therefore, withdrew from the jury the consideration of those questions. To this an exception was taken by the defendant's counsel, and this presents the only serious question in the case which we deem it necessary to here discuss.

Under the provisions of the Penal Code (§ 189) manslaughter in the first degree is defined as a homicide when committed without a design to effect death by a person in the heat of passion by the means of a dangerous weapon. A loaded revolver, such as was used by the defendant in effecting the death of Lutz, is a dangerous weapon within the meaning of the Code.

Referring to the testimony of the defendant, given upon the examination of his counsel, he stated he did not know just how it happened, but being under the influence of liquor when Lutz refused to take him back he said, " I was angry and mad and I just remember pulling out my gun and shooting him. There was no thought or desire in my mind that I recall to kill or hurt him. I was under the influence of liquor. After I had shot him I saw what I had done. I thought the best thing to do was to hurry up and get away from there. I thought of looking to see if he had any money. My object of getting money at that time was to get away from there as quickly as I could, as soon as I realized what I had done. I took his money and his watch and went right down toward the station and from there I went to Dover Plains first and finally reached New York." Upon his cross-examination he said that when Lutz returned from the milk factory he was driving two horses attached to a low milk wagon; that he asked Lutz if he could come up and stay until Sunday; that the horses were stopped in the highway at the time and when Lutz turned around to go and before he had started the horses, he shot him. He says: " When he turned to go his head was rather sidewise toward me, when he turned round to go he was facing Mr. Wanzer's place, looking at the horses. I was standing on the road beside him, right at the side of the seat. When he turned to go that left the side of his head toward me and then I shot." The defendant was also permitted by the court, over the objection of the district attorney, to read from the New York Evening Journal of July 1st an interview, which a reporter of that paper had had with the defendant, in which he stated, " I waited by the road until Lutz came along, then something suddenly flashed over my mind. I do not know what it was but it impelled me to do as I did. The refusal of the farmer to keep me while I was sick, my destitute condition and my failure in life, I believe, were the causes."

It will be observed that, neither upon his cross-examination nor in his interview which he gave to the reporter of the paper, which he was permitted to put in evidence, did he say anything about his being in the heat of passion or that he was mad. That only appears in his direct examination when questioned by his own counsel. But that, doubtless, was sufficient to bring it within the definition of manslaughter in the first degree, and under the provisions of the Code of Criminal Procedure upon an indictment for a crime consisting of different degrees the jury may find the defendant not guilty of the degree charged in the indictment, but guilty of any of the degrees inferior thereto authorized by the evidence. We are, therefore, of the opinion that the evidence, to which we have alluded, would have entitled him to have the jurors consider the question of manslaughter in the first degree, had they not reached the conclusion that he was guilty of murder in the first degree. Of course, the court could not coerce the jurors and force a conviction for a greater crime than they would otherwise have found him guilty of, by withholding from their consideration a lesser degree authorized by the evidence and instructing them to acquit if they did not find him guilty of the greater crime. But, as we have seen, the defendant was indicted, charged with the crime of murder in the first degree. This involved the intentional killing, with deliberation and premeditation, or of the killing with the intent to rob. The court submitted to the jurors the question as to the defendant's guilt under this charge and also instructed them as to the statutory definition of murder in the second degree, and instructed them that, in case they entertained a reasonable doubt as to his guilt of the crime charged they might determine the question as to his guilt of the lesser offense. The jurors, therefore, were not coerced into rendering a verdict in the first degree; for, under the charge of the court they had the right to convict in the second degree. The fact that they did not convict him of the lesser degree, in-

dicated that they had no doubt as to his guilt of the greater offense, and, therefore, the failure to instruct them that they had the right to convict of manslaughter in the first degree, a lesser degree than that of murder in the second degree could not well have harmed the defendant. Had they entertained a doubt with reference to his guilt in the first degree the defendant would have been entitled to the instruction by the court that, in case they entertained a reasonable doubt with reference to his guilt in the second degree, then they might consider that of manslaughter in the first degree.

Our conclusion, therefore, is that the jury having convicted the defendant of the crime of murder in the first degree under the charge that it had the power to convict in the second degree, the charge asked for with reference to manslaughter became immaterial and, therefore, resulted in no harm or error that calls for a reversal of the judgment.

The judgment of conviction should be affirmed.

CULLEN, Ch. J., GRAY, WERNER, WILLARD BARTLETT and HISCOCK, JJ., concur. VANN, J., not voting.

Judgment affirmed.