STATE OF NORTH CAROLINA v. JOE FREEMAN

No. 14

(Filed 19 November 1969)

**1. Homicide §§ 24, 28— instructions — burden of proving mitigation or self-defense — satisfaction of jury — greater weight of evidence**

In this homicide prosecution wherein the State's evidence of an intentional killing with a deadly weapon raised presumptions that the killing was unlawful and with malice, defendant was not prejudiced by the trial court's erroneous instruction that the burden on defendant to prove to the satisfaction of the jury circumstances which would reduce second-degree murder to manslaughter or establish self-defense required a higher degree of proof than proof by the greater weight of the evidence, where the jury, by returning a verdict of first-degree murder, established that defendant killed deceased with malice, premeditation and deliberation, and the evidence did not entitle defendant to an instruction upon mitigation or self-defense.

**2. Homicide §§ 24, 28— instructions — burden of proving mitigation or self-defense — satisfaction of jury**

Where there is evidence sufficient to establish an affirmative defense or to rebut the presumptions which arise against a defendant when a killing results from his intentional use of a deadly weapon, the court should instruct the jury that defendant has the burden of proving his defense or mitigation to the satisfaction of the jury — not by the greater weight of the evidence or beyond a reasonable doubt — but simply to the satisfaction of the jury.

**3. Homicide § 27— instructions — error in charge on manslaughter — verdict of first-degree murder**

Ordinarily, when the jury is instructed that it may find defendant guilty of first-degree murder, second-degree murder, manslaughter or not guilty, and the verdict is guilty of second-degree murder, an error in the charge on manslaughter will require a new trial since it cannot be known whether the verdict would have been manslaughter if the jury had been properly instructed; but where the jury was properly instructed as to

both degrees of murder and yet found defendant guilty of first-degree murder, error in the charge on manslaughter was harmless.

**4. Homicide § 30— failure to instruct on involuntary manslaughter**

In this homicide prosecution, defendant's evidence did not entitle him to an instruction on involuntary manslaughter where it showed that defendant had become and remained the aggressor when he shot deceased, and that he intentionally discharged his pistol when it was pointed in deceased's direction.

APPEAL by defendant from *Gambill, J.,* 3 February 1969 Criminal Session of GUILFORD.

Defendant, indicted, tried, and convicted for the first-degree murder of James Sawyer, appeals from the judgment of life imprisonment imposed in accordance with the jury's verdict.

Evidence for the State tends to establish these facts: James Sawyer (Sawyer) and his wife, Virginia, were living in a state of separation. Sawyer "stayed with a rooming lady." Virginia and defendant were "just friends." He lived in the back room of the house which she occupied with her child by Sawyer. On 22 July 1967 Sawyer came to his wife's home to see their child. According to Virginia he had no weapon. He and defendant exchanged some words, and Virginia told Sawyer to get out because she "didn't want to hear it." A neighbor called him to start a lawnmower, and he went across the street. Defendant got his gun, followed Sawyer, and kicked him. Virginia "hollered across the street," telling defendant to leave Sawyer alone. Instead, defendant shot at Sawyer, saying to him, "I will kill you, you so and so." Sawyer fled into Carolyn Whitworth's house and shut the door. Defendant pursued him, kicked open the door, and went in. Carolyn, who was asleep in her front bedroom, awoke to find defendant on one side of her bed and Sawyer on the other. Sawyer was pleading, "Joe, don't do it." Defendant shot across at Sawyer, who had nothing in his hand, and Carolyn saw him bleeding from the left arm and left chest. Sawyer ran into the living room and fell on his side at the front door. A police officer found him there about 7:30 p.m. Sawyer was carried to Cone Hospital, where a five-hour operation was performed upon him. A bullet, which entered his left chest, had penetrated his diaphragm, ruptured his spleen, pancreas, both walls of his stomach, the aorta, and the inferior vena cava. He died early in the morning of 23 July 1967 from irreversible shock caused by severe hemorrhaging.

Defendant's evidence, consisting entirely of his own testimony, tended to show: He lived in the home of Virginia Sawyer and "bought the fuel and the groceries and stuff like that." On 22 July 1967, Vir-

ginia's eleven-year-old niece told defendant that Sawyer was going to kill him because Virginia was mad at him about the woman next door, and Virginia said that her niece was "doggone right." Thereafter, Sawyer came to the house. An argument ensued between him and Virginia over their child, and she called defendant inside from the porch, where he had been sitting. Defendant had his gun in his belt, where he carried it to prevent Virginia from taking it. When he entered, Sawyer started at him saying, "I believe you will shoot me, but I will cut you." When defendant "offered to fight him fair fist," Virginia ordered them both out of the house. Defendant went across the street to the porch of Jake Brown. Sawyer followed him there and renewed the argument. Finally, he started to walk off but, after taking six or seven steps, he came toward defendant, shaking one finger in his face and threatening to get him. The other hand was in his pocket. Defendant saw no knife, but he pulled his gun from his belt. When he did so, Sawyer turned and ran toward Carolyn Whitworth's house. Defendant ran after him and, as Sawyer was going in the door, defendant shot at him. At that time, Sawyer's back was turned to defendant, and he was running away. Defendant followed him into the house. His account of what then transpired is as follows: ". . . I didn't see him nowhere. I looked through the back door and I didn't see him nowhere, and I started back out. . . . [W]hen I turned around to come back out he was coming from behind the door where I done pushed open, with his hand in his pocket then. And I jumped back off him and shot again. And so I don't know where I hit him or not but he — that is when he took his hand out of his pocket and went and layed (sic) down in the doorway."

In response to his counsel's question, "Did you intend to kill him?" defendant said, "No Sir. No, Sir. . . . [T]he gun went off when I jumped back. It shot all at the same time when I jumped back off him. . . . I was afraid of him. And I was trying to keep him off until I got a chance to get away from there. . . . James Sawyer had been threatening to kill me for over a year. . . . I didn't aim or nothing. I jumped back off of him and the gun went off all at the same time, like that. . . . He was coming out from behind that door. . . . [H]e was coming toward me and I jumped back, and shot him. . . . When I shot him he was still coming at me and when I jumped back off him and shot him, he took his hand out of his pocket and went and laid down in that door. . . . He laid down and I went back out."

Defendant testified that he left Greensboro immediately and went to Newark, N. J., because "they said" Sawyer's cousins were out to kill him. Nine months later, when the F. B. I. "got behind

him," he went to Philadelphia, where he was arrested. He also testified that deceased had the general reputation of being a dangerous fighting man.

The court charged the jury that they might return one of the following verdicts: Guilty of murder in the first degree, guilty of murder in the first degree with the recommendation of life imprisonment; guilty of murder in the second degree; guilty of manslaughter; or not guilty. The verdict was guilty of murder in the first degree with recommendation that his sentence be life imprisonment. From the life sentence, defendant appeals.

*Robert Morgan, Attorney General; Ralph Moody, Deputy Attorney General; and Andrew A. Vanore, Jr., Staff Attorney, for the State.*

*Henderson & Henderson and William A. Vaden for defendant appellant.*

SHARP, J.

**[1]** Defendant asserts, *inter alia,* that he is entitled to a new trial because (1) the judge erred in his charge with reference to the *quantum* of proof required of defendant in order to reduce murder in the second degree to manslaughter or to establish the defense of self-defense and (2) the judge failed to submit to the jury the issue of defendant's guilt of involuntary manslaughter.

The judge explained to the jury that if defendant intentionally shot Sawyer with a pistol and thereby caused his death, the law presumed that the killing was unlawful and done with malice and, nothing else appearing, defendant would be guilty of murder in the second degree; that if defendant would rebut the presumptions arising from such a killing he must establish to the satisfaction of the jury the legal provocation which would take from the crime the element of malice and thus reduce it to manslaughter or excuse the killing altogether on the grounds of self-defense. The judge then contrasted the State's burden, proof beyond a reasonable doubt, with defendant's burden, proof to the satisfaction of the jury. After explaining that proof beyond a reasonable doubt is the highest *quantum* of proof known to our law and that such intensity is not required of a defendant, the judge charged:

"But the defendant does not meet the requirements of law when he satisfies the jury merely by the greater weight of the evidence of the truth of the facts he relies on in mitigation, justification or ex-

cuse. By the greater weight of the evidence means simply evidence that, when compared with other evidence, is more convincing or evidence that carries greater assurance than that which is offered in opposition. And when the term 'to the satisfaction of the jury,' is used it is considered to bear a stronger intent of proof than by the greater weight of the evidence or preponderance of the evidence.

"So to prove facts to the satisfaction of the jury requires a higher degree of proof and signifies something more than belief founded on the greater weight of the evidence but does not require as high a degree or as strong, intensive proof as beyond a reasonable doubt."

Defendant excepted to the foregoing portion of the charge, which is clearly erroneous. Instructions in practically identical language have been held to be prejudicial error in *State v. Fowler*, 268 N.C. 430, 150 S.E. 2d 731; *State v. Matthews*, 263 N.C. 95, 138 S.E. 2d 819; *State v. Prince*, 223 N.C. 392, 26 S.E. 2d 875, and also in *State v. Calloway*, 1 N.C. App. 150, 160 S.E. 2d 501. These cases enunciate and reiterate the rule — established in our law for over one hundred years, *State v. Willis*, 63 N.C. 26 (1868) — that when the burden rests upon an accused to establish an affirmative defense or to rebut the presumption of malice which the evidence has raised against him, the *quantum* of proof is to the satisfaction of the jury — not by the greater weight of the evidence nor beyond a reasonable doubt — *but simply to the satisfaction of the jury*. Even proof by the greater weight of the evidence — a bare preponderance of the proof — may be sufficient to satisfy the jury, and the jury alone determines by what evidence it is satisfied. *State v. Prince, supra.*

**[2]** If there be evidence sufficient to establish an affirmative defense or to rebut the presumptions which arise against the defendant when a killing results from his intentional use of a deadly weapon, "[T]he accepted formula *and the one that should be used if risk of error is to be avoided,* is that the defendant has the burden of proving his defense (or mitigation) 'to the satisfaction of the jury — not by the greater weight of the evidence nor beyond a reasonable doubt — but simply to the satisfaction of the jury.'" Stansbury, N. C. Evidence § 214 (2d Ed. 1963). (Emphasis added.)

**[1, 3]** Erroneous though the challenged instruction was, it does not entitle defendant to a new trial for, demonstrably, it was harmless. First, the verdict of murder in the first degree established that defendant had unlawfully killed sawyer with malice, premeditation, and deliberation. *State v. Moore*, 275 N.C. 198, 166 S.E. 2d 652. Defendant assigns no error in the charge as it related to murder in the

first or second degree. The error related to the *quantum* of proof required to reduce second-degree murder to manslaughter or to excuse the killing on the ground of self-defense. "Prejudice could not come from such a charge, if erroneous, unless defendant had been convicted of murder in the second degree and there had been evidence of facts or circumstances in mitigation or excuse of the killing." *State v. Lipscomb,* 134 N.C. 689, 697, 47 S.E. 44, 46. Ordinarily, when the jury is instructed that it may find defendant guilty of murder in the first degree, murder in the second degree, manslaughter, or not guilty, and the verdict is guilty of murder in the second degree, an error in the charge on manslaughter will require a new trial. In such event it cannot be known whether the verdict would have been manslaughter if the jury had been properly instructed. But where, as here, the jury was properly instructed as to both degrees of murder and yet found defendant guilty of murder in the first degree rather than the second degree, it is clear that error in the charge on manslaughter was harmless. In *State v. Munn,* 134 N.C. 680, 47 S.E. 15, the jury found "that beyond all reasonable doubt the prisoner slew the deceased willfully, deliberately and with premeditation, and was guilty of murder in the first degree. The State (had) thus satisfied them of facts raising the crime above murder in the second degree, which only was presumed from the (intentional) killing with a deadly weapon. If there were error in the charge as to mitigation below murder in the second degree, it was therefore immaterial error." *Id.* at 682, 47 S.E. at 16. Similarly, when the jury in this case became convinced beyond a reasonable doubt that defendant, after having decided to take Sawyer's life, intentionally and unlawfully shot and killed him, the *quantum* of proof by which a defendant is required to rebut the presumption of malice which arises when death results from the intentional use of a deadly weapon becomes academic and irrelevant.

[1]　　Second, defendant was not entitled to an instruction upon self-defense or mitigation. In *State v. Utley,* 132 N.C. 1022, 43 S.E. 820, the defendant was convicted of murder in the second degree. The judge charged the jury that the defendant was required to prove mitigating circumstances beyond a reasonable doubt. The court said that, unless it was harmless, this error would require a new trial and it was not harmless *if* "in any aspect of the case the jury could have rendered a verdict of manslaughter under the law." *Id.* at 1024, 43 S.E. at 821. Looking at the evidence in the light most favorable to the defendant, the court held there was no such evidence and affirmed the verdict.

In this case the evidence is insufficient to show that defendant

slew Sawyer in the heat of passion engendered by provocation which the law deems adequate to depose reason. *State v. Merrick,* 171 N.C. 788, 88 S.E. 501; *State v. Merrick,* 172 N.C. 870, 90 S.E. 257. Indeed, defendant does not make that contention. He now asserts that the killing was either unintentional or in self-defense. However, his testimony does not invoke the doctrine of self-defense, *State v. Davis,* 225 N.C. 117, 33 S.E. 2d 623; *State v. Rawley,* 237 N.C. 233, 74 S.E. 2d 620, or tend to show accident, *State v. Phillips,* 264 N.C. 508, 142 S.E. 2d 337; *State v. Faust,* 254 N.C. 101, 118 S.E. 2d 769.

[4] The remaining question is, did defendant's evidence entitle him to have the issue of his guilt of involuntary manslaughter submitted to the jury? There are well-considered cases from other jurisdictions which hold that in a prosecution for homicide, where the court correctly instructed as to murder in the first and second degrees and the jury found the defendant guilty of murder in the first degree, any error in refusing to instruct as to manslaughter was harmless. The exposition is this: A verdict of murder in the second degree would have supported the claim that the jury might have found the defendant guilty of a still lower degree of homicide had they been given the opportunity under proper instructions. "All such speculations are dissipated, however, by the fact that the defendant was found guilty of murder in the first degree. When the jury excluded from the case the alternative of murder in the second degree, all lower degrees were necessarily eliminated by the same rule." *People v. Brown,* 203 N.Y. 44, 51, 96 N.E. 367, 369. A verdict of murder in the first degree shows clearly that the jurors were not coerced, for they had the right to convict in the second degree. That they did not indicates their certainty of his guilt of the greater offense. The failure to instruct them that they could convict of manslaughter therefore could not have harmed the defendant. *People v. Granger,* 187 N.Y. 67, 79 N.E. 833; *State v. Lantzer,* 55 Wyo. 230, 99 P. 2d 73; *State v. Metcalf,* 203 Kan. 63, 452 P. 2d 842; *State v. Loveless,* 62 Nev. 17, 150 P. 2d 1015; *Tarrence v. Commonwealth,* 265 S.W. 2d 40 (Ky. 1953); *Brown v. State,* 219 Ark. 647, 243 S.W. 2d 938; *State v. Clokey,* 83 Idaho 322, 364 P. 2d 159; *State v. Drosos,* 253 Iowa 1152, 114 N.W. 2d 526; 24B C. J. S. *Criminal Law* § 1923(3) (1962). See the dissenting opinion in *People v. Modesto,* 31 Cal. Rptr. 225, 382 P. 2d 33, 41-55.

The foregoing is the rationale of this Court in *State v. Lipscomb, supra,* and *State v. Munn, supra,* and ' the rationale by which we conclude that the error in the charge (Assignment No. 1) was harmless. However, in cases where there was evidence tending to sup-

port a lesser degree of the crime charged in the bill of indictment, and the trial judge *failed* to submit the issue, the decision has been that the defendant is entitled to have all the different views presented to the jury. In these situations the holding is that the judge's failure to submit the question of defendant's guilt of the lesser included offense is not cured by a verdict convicting the defendant of the highest offense charged in the bill — even though the conviction could have been of an intermediate offense. *State v. Moore,* 275 N.C. 198, 166 S.E. 2d 652; *State v. McNeill,* 229 N.C. 377, 49 S.E. 2d 733; *State v. Lee,* 206 N.C. 472, 174 S.E. 288; *State v. Williams,* 185 N.C. 685, 116 S.E. 736; *State v. Merrick,* 171 N.C. 788, 88 S.E. 501. The opinions in these cases did not specifically discuss the rationale contained in *Lipscomb* and *Munn* and the cases cited herein from other jurisdictions. Nor is it now necessary to consider whether there is any justification for making a distinction between the situation in *Lipscomb* and *Munn* and that in *State v. Moore, State v. McNeill, State v. Merrick,* and the other cases cited above, for we hold that the evidence did not justify a charge upon involuntary manslaughter.

By his own statement defendant pursued the fleeing Sawyer, who had displayed no weapon and had none insofar as the evidence discloses. Defendant attempted to shoot him in the back as, seeking sanctuary, he ran through the door of Carolyn Whitworth's house. In hot pursuit, with pistol in hand, defendant invaded her home. As soon as he saw Sawyer coming from behind the door defendant had pushed open, defendant "jumped back off him and shot him again."

Whatever may have transpired before Sawyer left Jake Brown's porch, when defendant pursued him across the street into Carolyn Whitworth's home after he had attempted to shoot him in the back, it is quite clear that defendant had become *and remained* the aggressor. Defendant's own recitation of his actions belie his disavowal of an intent to kill. In any event, however, the mere absence of a specific intent to kill Sawyer would not require the submission of the issue of defendant's guilt of involuntary manslaughter. Considering defendant's testimony in its entirety, it is quite clear that he intentionally discharged his pistol when it was pointed in Sawyer's direction. He says it was because he was afraid of Sawyer. The jury, however, thought otherwise.

Although defendant was not entitled to either instruction, the judge gave him the full benefit of his plea of self-defense and of the law relating to a killing in the heat of passion. Notwithstanding the error discussed earlier herein, the overall effect of the judge's charge

was in defendant's favor. All the evidence tends to establish defendant's guilt of murder in the first degree. He has had a trial free of prejudicial error, and we see no reason to disturb the verdict.

No error.