STATE v. CHAS. MOORE and MARY MOORE.

The question of " cooling time," is a question of law to be decided by the Court,. and not a question for the jury.

If such a question be left to the jury, and they decided it as the Court should. have decided it, this error is no cause for a new trial.

The separation of two persons engaged in fist-fight, which eventually terminates in a homocide, to justify a verdict of murder, must be for a time sufficient for the passions excited by the fight to have subsided, and reason to have resumed its sway. *Hence,* Where one witness testified that the prisoner was " absent no time," and another, that after the first fight he started to go home, and looking back the parties were again fighting: *Held,* There was not such sufficient cooling time as to justify a verdict of murder.

INDICTMENT for murder, tried before *Logan, J.,* at Spring Term, 1873, of the Superior Court of MECKLENBURG county.

Prisoners were indicted, for the murder of one Robert. Smith, and having severed in their trial, Charles Moore was: tried and convicted.

It was contended for the prisoner that the crime committed was manslaughter. The evidence for the State was substantially as follows :

Sarah Ann Davidson testified, that she lived a short distance from the prisoner on the same side of the alley ; the prisoner lived on the opposite side of the alley, and opposite the house of the witness. When the fight took place witness was opposite prisoner's house, and the deceased was going along the street towards the house, and when opposite the gate the prisoner said, " Who is that?" Deceased answered, " It is me." Prisoner said, " What do you want ?" Deceased replied, " I dont't want you, but want to see Mary (living with prisoner as his wife). Prisoner then · said,. " You were listening to my conversation." Deceased replied, " That he was doing no such thing." Prisoner replied, " You are a damn'd liar ;" to which deceased said,. " You are an infernal liar." Curses followed. Deceased. was in the street, and said. to prisoner, " If you come out.

and curse me I will hit you." Prisoner went out, he and deceased continued to quarrel, prisoner alleging that the deceased was eaves-dropping, and deceased denying it all the while; then they both went together fighting; were not long engaged in a fight when they stopped; prisoner's so-called wife called him into the house; he went in, but remained (in the language of the witness), "absent but no time." Deceased was still in the street; witness walked off; heard deceased say that prisoner had killed him; the parties were still close together; deceased then went home; he was stabbed in the left side; it was about 8 o'clock, P. M., and cloudy; witness saw no knife; deceased and prisoner were not friendly; they did not visit.

On her cross-examination the witness testified: At first the parties did not appear mad; witness heard all the talk; they made considerable fuss; heard prisoner say to deceased, " I will report you to the Mayor."

Jane Smith, a daughter of deceased, testified that when she went out they were fighting, she tried to get deceased home; went between them and tried to separate them; deceased walked off; prisoner said, "If you hit me again I will sicken you;" Mary Moore, prisoner's wife, said, "Let them fight," and pushed the prisoner to deceased and they went together fighting; deceased jumped away, and said, "Charley has killed me;" deceased went home and fell in the door; he was stabbed in the left side and lived an hour and a half.

Other witnesses were examined for the prosecution, but no new facts were elicited. The prisoner offered no evidence, but through his counsel asked his Honor to charge the jury:

That if the jury are satisfied that the parties upon a sudden quarrel got into a fist-fight, and the prisoner before separation gave the fatal stab, it would be manslaughter.

That a mutual combat with fists is a legal provocation,

and reduces a slaying by a deadly weapon (not shown to be unusual), to manslaughter.

That the evidence discloses that there was not sufficient "*cooling time*," between the fights.

Other instructions were asked, but as the case in this Court turned upon the last, they are not necessary to an understanding of the decision.

In answer to the last instructions his Honor charged the jury that if parties engage in any affray, or there is other legal provocation, and they become separated, then if there is sufficient " cooling time," it will be murder; that if one of two parties, after separation, goes off and then returns and again engages in an affray, then if there was sufficient time for the passions to cool, it would be murder.

That it was the duty of the jury to apply these principles to the evidence, and if they were satisfied that the prisoner was guilty of murder, they should so find; otherwise to find him guilty of manslaughter.

Verdict, guilty of murder. Rule for a new trial; rule discharged. Judgment and appeal.

*Purnell*, for the prisoner.

1. His Honor erred in refusing the fifth instruction asked for by defendant's counsel. *State* v. *Jacob Johnson*, 2 Jones; *Commissioners of Newbern* v. *Dawson*, 10 Ired., 436; *State* v. *Moses*, 2 Dev., 452; *Bailey* v. *Pool*, 13 Ired., 404; *State* v. *Christmas*, 4 Jones, 471. Revise Code, page 185.

2. We submit that his Honor erred in submitting to the jury the question of " cooling time." It is firmly settled that this is a question of law for the Court. *State* v. *Sizemore*, 7 Jones, 206.

Nor is the error covered by the jury as the only evidence as to time was that it was " no time," which must of necessity mean the shortest space of time, and besides, his Honor

·was especially requested to instruct the jury by the sixth instruction, prayed that there was not sufficient cooling time.

*Attorney General Hargrove*, for the State, cited *State* v. *Johnson*, 1 Ired., 352 ; *State* v. *Curry*, 1 Jones, 280.

BOYDEN, J. We think his Honor erred in refusing the .sixth prayer for specific instructions, to-wit : That the evidence discloses that there was not sufficient cooling time between the fights.

The whole testimony shows that there was a sudden ·quarrel resulting in blows with the fists; that at length the combatants separated, and the evidence as to the length of time they were separated is first by the witness, Sarah Ann Davidson, witness for State, who says that " the prisoner was .absent but no time." William Smith, another witness for the State, testified that he saw the parties fighting ; deceased told witness to go home, and witness started back ; prisoner .and deceased had separated ; witness looked back and saw they were fighting again, then heard the deceased say that the prisoner had killed him.

It is well settled in our State that the question of cooling time is a question of law to be decided by the Court, and not a question for the jury. It is also settled that if such a question is left to the jury, and they decided the question as the Court should have decided it, this error forms no cause for a new trial. So the question is distinctly raised, does the evidence show that in law there was sufficient cooling time? The Court here are of opinion there was not sufficient cooling time. The two witnesses for the State and the only ones that testified upon this question state the fact that the prisoner was absent no time, in other words, the separation was so short that she could not compute the time, .and the other witness says the prisoner ,and the deceased were separated and deceased desired witness to go home,

that he started, that he looked back and they were again engaged in the fight. It seems to the Court that this testimony does not show that there was a sufficient time during the separation for the passions excited by the fight to have subsided, and reason to have resumed its sway, and on this ground there must be a *venire de novo.*

This renders it unnecessary to notice the other questions made in the case.

PER CURIAM.                    *Venire de novo.*