## STATE v. JUNE BOWMAN and FRANK PROPST.

(Filed 11 May, 1910.)

**1. Murder—Conspiracy—Evidence—Question for Jury.**

Upon a trial for murder, evidence of unfriendly feeling between the defendants and deceased; that the deceased struck one of them, who said, "I will get you later"; that the two defendants then drove off some distance in a buggy, then returned, quarreled with deceased, and one of them untruthfully said, "He is coming on me with a knife"; the deceased advanced upon him, he drew back, and fell with deceased on top of him, whereupon he cried that he was being cut to pieces, and the other defendant rushed in and killed the deceased with a knife, the first defendant having been but slightly cut, is sufficient to take the case to the jury upon the question of conspiracy.

**2. Instructions Requested—Language of Court.**

It is not error for the court to charge the jury in his own language correct special prayers of instruction, when he does not weaken the force of the instruction requested.

**3. Instructions—Exceptions Specific—Appeal and Error.**

While an instruction as to one of the defendants on trial for murder may not be strictly correct in law, yet when it is correct as to him and another defendant upon the question of conspiracy, his exception must specify the particular part of the charge claimed to be erroneous for it to be considered on appeal.

**4. Murder—Conspiracy—Act Committed by Another—Instructions.**

When upon trial for a conspiracy to murder deceased there is evidence that a third person did the killing, a charge by the court, that if this person inflicted the wounds which caused the death they should return a verdict of not guilty as to both de-

152—52

STATE *v.* BOWMAN.

·fendants, and also charging fully and correctly on the doctrine of reasonable doubt, etc., is sufficient and renders immaterial his failure to give defendants' requested instructions upon this phase of the case.

5. **Murder—Conspiracy—Jeopardy of Another—Defense Excluded.**

When under a correct charge of the court upon the evidence the jury has rendered a verdict that the two defendants murdered the deceased in accordance with a conspiracy they had previously entered into, the idea is excluded that the one who did the deed was convicted, notwithstanding the jury may have found from the evidence that he had intervened and delivered the fatal blow to prevent the deceased from committing a felony by killing his codefendant and companion without legal excuse, when he had reason to believe that such would otherwise have resulted.

6. **Murder — Conspiracy—Manslaughter—Defense Excluded—Appeal and Error.**

The defense of manslaughter is inconsistent with a conviction of the defendants for murder in the second degree for a conspiracy to murder the deceased, and when the jury have found that the conspiracy resulting in murder had been formed between the defendants, they will not on appeal be permitted to aver that they killed the deceased in the heat of passion, or upon any legal provocation, or for any other reason which would reduce the crime to the degree of manslaughter.

APPEAL by defendants from *Councill, J.,* at September Term, 1909, of ALEXANDER.

The facts are sufficiently stated in the opinion of the Court.

*Attorney-General Bickett, George L. Jones, M. N. Harshaw* and *J. L. Gwaltney* for the State.

*A. A. Whitener, W. A. Self* and *W. C. Feimster* for defendants.

WALKER, J.   The defendants were indicted for the murder of John Hafer, and were convicted of murder in the second degree. They appealed from the judgment rendered upon the verdict. There are thirty-four exceptions in the record, but we think they can all be reduced, substantially, to one or two questions which require consideration.   The evidence tends to show that, .on the day the homicide was committed, the deceased and several other persons had assembled in the woods for the purpose of fighting chickens, and while they were thus assembled defendant Propst and the deceased exchanged some angry words, whereupon the deceased struck Propst in the face, and the latter said to him: "I will get you later." They continued to use insulting language towards each other, each cursing the other.  Bowman and Propst drove off some distance in their buggy, and

after a short time returned to the place from which they had started, and immediately upon their return Propst commenced to quarrel with the deceased, who was at that time preparing to leave the place for his home. It also appears that before Hafer had done anything at all, or attempted to do anything, Propst was heard to call out: "He is coming on me with a knife!" whereupon Propst stepped back and the deceased advanced upon him. Propst fell down and the deceased fell on top of him, and then Propst cried out that he was being cut to pieces. Bowman immediately rushed in and stabbed the deceased twice, inflicting wounds from which he died. Propst received no serious wounds, but was only slightly cut.

There was evidence of the state of feeling between the defendants and the deceased, which was not friendly.

The testimony on the part of the defendants tended to contradict that of the State. It was contended by the latter, though, that there was sufficient evidence for the consideration of the jury to show that the defendants had conspired to attack John Hafer, the deceased, and that they returned to the place where he was for that purpose, it being their understanding and agreement that Propst should cause young Hafer to advance on him so that the defendant Bowman should have an excuse for assaulting the deceased.

Upon a careful examination of the testimony to be found in the record, we think the question as to whether there was a conspiracy between the defendants to make an assault upon the deceased was properly submitted to the jury. There was, at least, more than a scintilla of evidence, and it was for the jury, under proper instructions from the court, to find how the fact was. The conduct of Propst himself was very suspicious, as Hafer had done nothing, and was doing nothing, when Propst said that he was advancing on him, and cried out for help. It is true that the defendants alleged that they returned to the place where the deceased was cut, because one of them had left his coat and not for the purpose of having any quarrel or difficulty with Hafer. It is evident, from the case as stated in the record, that the jury rejected this part of the defendants' testimony because they found, from all the facts and circumstances of the case, that a conspiracy had been formed between the defendants for the purpose of making an assault upon the deceased. The case, in this respect, was fairly submitted to the jury, under proper instructions from the court.

The defendants requested the court to give several instructions to the jury, but we think that those which were proper were substantially given by the court. It is true that the lan-

guage of the prayers for instructions was not used by the court, but this was not necessary, provided the court did not weaken the force of the instruction which was requested, by the use of other language. *Chaffin v. Manufacturing Co.,* 135 N. C., 95. It may be that one of the instructions given by the court, as to Bowman, was not strictly correct in law, but the said instruction was given in connection with another in regard to the conspiracy, which was undoubtedly correct, and, therefore, the exception must fail, as the defendant should distinctly point out the particular part of the charge which he alleges to be erroneous, and if he covers by his exception instructions, some of which are erroneous and some of which are not, the invariable rule is to disregard the exception, as the court is not called upon to decide, upon an exception so general in its form, which one of the instructions is alleged to be erroneous. *S. v. Hall,* 132 N. C., 1094; *Gwaltney v. Assurance Society, ibid.*

The defendants alleged that the deceased had been cut by Earle Brinkley, and asked for an instruction as to this phase of the case, which they contended was based upon evidence tending to show that the deceased had not been cut by Bowman, but by Brinkley. We think this request for instructions was fully met by the charge of the court, because the court told the jury that if Earle Brinkley inflicted the wounds which caused the death of Hafer, they should return a verdict of not guilty as to both defendants; and the court further instructed the jury fully as to the doctrine of reasonable doubt, charging them that, in order to convict the defendants, or either of them, they must be fully satisfied, under the evidence and the instructions of the court, of the existence of each fact necessary to establish their guilt, one of the facts being, as stated by the court, that Bowman had inflicted the fatal wound.

It may be further remarked, as to the defendant Bowman and with reference to the prayers for instructions submitted in his behalf by his counsel, that the jury could not have convicted him of murder in the second degree because he had intervened and delivered the fatal blows to prevent John Hafer from committing a felony by killing his codefendant and companion without legal excuse, when he had reason to believe that such a felony was about to be committed, for the court charged the jury that if they found from the evidence that a conspiracy had not been formed between the two defendants to make an assault upon John Hafer, as contended by the State, they should acquit the defendant Propst, and in that case they could convict Bowman only for using excessive and unnecessary force in his attack upon the deceased with a knife. The jury convicted Propst

under this charge, and they must have found, therefore, that such a conspiracy had existed between the two defendants.

This brings us to what we consider as the defendants' principal assignment of error. The court charged the jury that in no view of the case was there any element of manslaughter in the homicide committed by the defendants, and, therefore, they must either convict of murder in the second degree, as to both of the defendants, or of murder in the second degree as to Bowman and acquit Propst, or they must return a verdict of not guilty as to both.

The verdict established the fact that a conspiracy had been entered into between the defendants to provoke a difficulty with John Hafer, with the ultimate design of assaulting him and of taking his life, if necessary, in the affray which was likely to ensue. Such a conspiracy was totally inconsistent with any idea of manslaughter, for it shows both malice and premeditation in the killing, and these are elements of murder. The jury having found the actual facts to be that a conspiracy had been formed between the defendants, they will not be permitted now to aver that they killed the deceased in the heat of passion, or upon a legal provocation, or for any other reason which would reduce the crime to the degree of manslaughter. It therefore follows logically that any error which the court may have committed in its charge, as to that offense, upon a hypothetical state of facts, which the jury, by their verdict, have repudiated, is immaterial and harmless, even if any such error was committed. *S. v. Munn*, 134 N. C., 680.

The exceptions taken to the admission or exclusion of evidence are, in our opinion, without merit, or if an error was committed in respect thereto, it was harmless. We do not mean to imply that there was any error.

Upon a review of the whole case, we think the defendants have been fairly tried according to law, and that they have no ground to complain of the ruling of the court, or of the verdict and judgment.

No error.