STATE v. MERRICK.

STATE v. THOMAS MERRICK.

(Filed 12 April, 1916.)

1. **Homicide—Indictment—Less Offense — Malice — Passion—Cooling Time—Manslaughter.**

    Manslaughter is the unlawful killing of another without malice, and may occur in instances where the killing has been done by reason of sudden anger aroused by provocation which the law deems adequate and sufficient to displace malice, and committed so soon after the provocation that a sufficient time has not elapsed for passion to subside and reason return to the accused.

2. **Same—Trials—Matters of Law—Questions for Jury.**

    Upon the trial for a homicide, the length of time after the provocation before the killing necessary to reduce the offense to manslaughter is a matter of law for the courts, and only the existence or nonexistence of the facts controlling its application in a given case is for the jury.

3. Homicide—Manslaughter—Evidence — Instructions — Appeal and Error—
   Statutes.

Upon a trial for murder a verdict for a less grade of crime is per-
mitted, and where the indictment is for murder, and there are facts in
evidence tending to reduce the crime to manslaughter, it is reversible
error for the trial judge not to submit this phase to the jury, under a
proper charge, though not requested by the defendant to do so, and
although he has offered to submit to a verdict of murder in the second
degree, which has been refused. Revisal, sec. 535.

4. Homicide—Manslaughter—Evidence.

Upon this trial for a homicide there was evidence tending to show
that the prisoner, a lad, was sitting in a "coca-cola plant," with the
permission of the proprietors, which was divided midway by a partition
with a communicating door, when the deceased, a fine specimen of phys-
ical manhood, and an employee, came in, commenced an altercation over
a hitching rein, shoved the defendant from a box on which he was sit-
ting and struck him twice; that defendant ran into the back room, re-
turned for his hat, and again returned with a gun he had borrowed to
shoot birds with, loaded with No. 6 shot, then cursed the deceased and shot
and killed him. There was testimony that the defendant returned with
the gun "in no time," and again, from one to two or three minutes, the wit-
nesses not being definite in their statements. Held, evidence sufficient
to be submitted to the jury upon the question of the offense of man-
slaughter.

5. Homicide—Submission—Manslaughter—Verdict—Appeal and Error.

Upon a trial for a homicide, the accused offered to submit to a verdict
of murder in the second degree, which was refused, and thereafter evi-
dence was developed which tended to reduce the grade of the offense to
manslaughter. This phase of the case was not submitted by the judge
to the jury, which rendered a verdict of guilty of murder in the first
degree. Held, the error of the court was not cured by the verdict, and
was reversible error.

ALLEN, J., dissenting.
CLARK, C. J., concurring in the dissenting opinion.

INDICTMENT for murder of Leon B. Hudson, deceased, tried before
*Daniels, J.,* and a jury, at November Term, 1915, of NEW HANOVER.

The evidence on the part of the State showed that on 31 August, 1915,
deceased was killed by a gunshot wound, intentionally inflicted by de-
fendant. There was no testimony offered by defendant, and, on the
facts in evidence, the jury rendered a verdict of guilty of murder in the
first degree. Sentence imposing the death penalty, and defendant ap-
pealed and, pursuant to exceptions duly entered, among other things,
made assignments of error in effect as follows:

1. That the court in its charge to the jury entirely failed to present
the question of manslaughter, when there were facts in evidence per-
mitting an inference of manslaughter and properly requiring that this
view of the case be considered by the jury.

2. That the court in its charge entirely failed to give any explanation of the question or significance of "cooling time" in reference to its effect on the crime of manslaughter, when there were facts in evidence requiring that such question be referred to and properly explained.

3. That the court in its charge affirmatively restricted the jury to the consideration of the question of murder in the first and second degrees, when there were facts in evidence which permitted and required that the question of manslaughter should be also considered and passed upon.

4. That the court in its charge to the jury presenting the issue, among other things, said: "So, gentlemen, the question for you, and the only question, according to the contentions of the State and defendant, is this: 'Did the defendant commit the act with deliberation and premeditation?' " thus confining the deliberations of the jury to the question of murder in the first and the second degrees, when there were facts in evidence tending to establish the crime of manslaughter and which should have been also submitted.

*Attorney-General Bickett and Assistant Attorney-General Calvert for the State.*
*M. J. Bellamy and Burke H. Bridgers for defendant.*

HOKE, J.   In general terms, manslaughter is said to be the unlawful killing of another without malice, an instance of the crime so defined being where one unlawfully kills another by reason of the anger suddenly aroused by provocation which the law deems adequate; anger naturally aroused from such provocation and the killing being done before time has elapsed for "passion to subside and reason to reassume her sway." In such case the anger so aroused is held to displace malice and will reduce the unlawful homicide to the grade of manslaughter. *S. v. Baldwin,* 152 N. C., 822; *S. v. Hill,* 20 N. C., 629; *Maher v. The People,* 10 Mich., 212. Speaking to this subject in *Maher's case, Christiancy, J.,* delivering the opinion, said: "But if the act of killing, though intentional, be committed under the influence of passion or in heat of blood, produced by an adequate or reasonable provocation and before a reasonable time has elapsed for the blood to cool and reason to resume its habitual control, and is the result of the temporary excitement by which the control of reason was disturbed, rather than of any wickedness of heart or cruelty or recklessness of disposition, then the law, out of indulgence to the frailty of human nature, or, rather, in recognition of the laws upon which human nature is constituted, very properly regards the offense as of a less heinous character than murder, and gives it the designation of manslaughter." And again, in same case: "The principle involved in the question, and which I think clearly deducible from the majority of well considered cases, would seem to suggest as the true general rule that reason should, at the time of the

act, be disturbed or obscured by passion to an extent which might render ordinary men, of fair average disposition, liable to act rashly or without due deliberation or reflection, and from passion rather than judgment."

In regard to the time to be allowed in the proper application of the principle, usually termed "cooling time," it is said to be the trend of the more recent decisions to hold that the question should be determined by the jury under the relevant facts of each case, Clark on Criminal Law, p. 228; but in this jurisdiction the rule has thus far prevailed that the question of cooling time is one of law for the courts, and only the existence or nonexistence of the facts controlling its application in a given case is for the jury. *S. v. Moore,* 69 N. C., 267.

These being the positions appertaining to the crime of manslaughter and more directly relevant to the question presented, it has been held with us in numerous cases, and the position is in accord with authoritative decision elsewhere, that where in an indictment for murder the law in this State permitting a verdict for a lesser grade of the crime, if there are facts in evidence tending to reduce the crime to manslaughter, it is the duty of the presiding judge to submit this view of the case to the jury under a correct charge, and his failure to do so will constitute reversible error, though the defendant may have been convicted for the higher offense. *S. v. Clyde Kennedy,* 169 N. C., 289; *S. v. Kendall,* 143 N. C., pp. 659-664; *S. v. White,* 138 N. C., pp. 704-715; *S. v. Foster,* 130 N. C., pp. 666-673; *S. v. Jones,* 79 N. C., 630; *S. v. Matthews,* 148 Mo., 185; *Baker v. The People,* 40 Mich., 411.

In *Kendall's case, supra,* it was held: "It is a principle very generally accepted that on a charge of murder, if there is any evidence to be considered by the jury which tends to reduce the crime to manslaughter, the prisoner, by proper motion, is entitled to have this aspect of the case presented under a correct charge, and if the charge given on this question is incorrect, such a mistake will constitute reversible error, even though the prisoner should be convicted of the graver crime, for it cannot be known whether, if the case had been presented to the jury under a correct charge, they might not have rendered the verdict for the lighter offense."

In *Foster's case, supra,* the present *Chief Justice,* delivering the opinion, said: "If it had been clearly explained to the jury what constituted murder in the second degree, of which, through his counsel, he had admitted himself to be guilty, it may be that the jury would have coincided with that view; but, in the absence of instruction on that offense, with only the issue of murder in the first degree placed before them with instructions only as to that offense, with evidence of the homicide, it may well be that the jury held against the prisoner, that he was guilty, simply because they were not informed as to the constituent

elements of the lesser offense"; and for this omission a new trial was allowed, the prisoner having been convicted of murder in the first degree.

In *S. v. Jones,* a conviction for the capital crime of murder, it was held error to exclude from the jury the view of manslaughter, there being evidence tending to establish such crime.

In the present case there was no claim or suggestion of any previous animosity existent between the prisoner and the deceased, and the facts in evidence on the part of the State tended to show (the defendant offering no testimony) that the homicide occurred on 31 August, 1915, in the city of Wilmington in the front room of the "coca-cola plant" of A. B. Merritt, about 4 o'clock p. m.; that this plant consisted of a house about 30 feet wide and 60 feet long, divided midway by a partition; that a door opened from the front to the back compartment and a large door led into a back yard, across which was a coal and wood plant operated by the same proprietor; that the defendant was a hand doing work in the wood yard when needed, but on that afternoon there was no work to be given him, and he was over in the coca-cola department, doing nothing, and was sitting on a crate in the front compartment talking with one of the employees. So far as appears, he was there without objection, for the witness Parker, who seems to have had immediate charge, says that he had made no objection to the boy being there, and while the proprietor testifies that "he had given Hudson authority," he does not say authority for what, and immediately adds: "I had intended Parker to keep the boys away from the place, and had told Hudson to use his influence with Parker to keep them away." The boy, then, was there without objection being made known to him, and while sitting down, as stated, talking to one of the hands, deceased, who drove a delivery wagon for the plant, came into the compartment and asked the defendant where his hitching rein was. Defendant replied, "It is my hitching rein." Hudson replied, "It's no such a damn thing," and, starting towards the boy, said: "You get out of here." The boy replied, "Mr. Hudson, you don't own this plant, and you have no right to put me out." Hudson, said to be a fine specimen of manhood, weighing 165 pounds, continued to advance, caught the boy, the defendant, and pushed or shoved him off the box and, two of the witnesses say, struck him twice. The defendant, getting loose, ran into the back room, returned and got his hat, which had fallen off his head; went again into the back room and, returning with a gun, called to Hudson: "You are a G—— d—— son of a bitch!" and fired and killed him; that the boy had borrowed the gun to hunt birds, rice birds or coots, which were killed for eating at that time of year, and had the gun somewhere in the back room; that it was loaded with shot something like No. 6. Four or five of the employees, testifying to the occurrence, said that when the boy went out the first time he stayed three or four minutes, and, returning for his

hat, went out and stayed the same length of time before he returned with the gun and fired, killing the deceased. One of these witnesses, however, on cross-examination, said that he would not say definitely that these periods when the boy was out of the room were three or four minutes; it might have been "one minute"; and again: "That it didn't seem like no time." Two others of these eye-witnesses who had testified that the boy was out of the room "two or three minutes each time," when asked on cross-examination if he went out of the building to get the gun, answered: "No; he didn't have time for that."

Upon these, the facts chiefly relevant and controlling on the questions presented by the appeal, we are of opinion that there was prejudicial error committed in excluding from the jury any and all consideration as to the crime of manslaughter, and restricting their deliberations to the questions of murder in the first and second degrees. If the defendant, on being accused of wrongfully taking the check rein of deceased, then jerked or shoved from the box and struck twice, had immediately fired and killed deceased—killed in the passion then aroused by the assault and battery upon him—the crime would have been reduced to manslaughter, *S. v. Sizemore,* 52 N. C., 206; and if on being so assaulted he had rushed into the back room, returned for his hat, again went out, returning immediately with the gun, and fired and killed the deceased— killed in the anger aroused by the blows he had just received and so immediately thereafter that "there was not sufficient time for passion to subside and reason to reassert its sway"—it would still be manslaughter, and the relevant time that did elapse between the provocation and the homicide is left too indefinite and uncertain by the witnesses for the court to rule as a matter of law that there is no element of manslaughter involved in the case.

We all know how prone witnesses are to inaccurately express themselves when stating the time that has passed in a given case. In an extended experience on the *nisi prius* Bench and at the Bar, the writer has rarely heard a witness give a multiple of time less than a minute. They not infrequently say minutes and mean seconds, and, in the presence of a great tragedy like this, the mind of an average witness is not likely to take due note of time or to express it accurately when testifying at some later period; and when to this is added the fact that one of the principal witnesses has said, on cross-examination, that defendant was out of the room "no time," and two others that he wasn't gone long enough to leave the rear room, we are confirmed in the view that the time that elapsed must be referred to the jury and the ruling as to cooling time made on the facts as they may find them.

It is urged in support of the proceedings below that the jury having convicted the defendant of murder in first degree, they have thereby necessarily excluded any and every view of the evidence tending to show

manslaughter, and therefore the failure to submit the cause in that aspect should not be considered as prejudicial error, and *S. v. Lipscomb,* 134 N. C., 689, and other cases are cited as authority for the position.

As we have endeavored to show, it is an established principle in our criminal procedure that, on conviction of murder, if there are facts in evidence tending to establish a lesser grade of the offense, it is reversible error not to have presented the case to the jury in that aspect, for it cannot be determined how and to what extent it may have influenced the verdict of the jury as rendered; and there is nothing in the decision in *Lipscomb's case* that militates against the position. In that case the prisoner and deceased were sitting down in the latter's home arguing on the Scriptures, and the prisoner, becoming irritated by the course of the discussion, stepped outside, got his gun, and, returning, shot and killed the deceased as he sat in his chair. In explanation, defendant testified that he was afraid of deceased, and thought he was a conjurer and was using his powers against defendant or his family. The case was submitted on the questions of murder in the first and second degrees, and there was no error in the charge on either question. *Associate Justice Walker,* after upholding the conviction on that ground, and in reference to an exception whether presumption of malice, arising at common law from an intentional killing, had been rebutted, said that "if there was error in this, it could not have prejudiced the prisoner, the jury having found him guilty of willful, premeditated murder." There were no facts in evidence permitting an inference of manslaughter; none to rebut the presumption of malice existent from an intentional killing, and the comment, which was only made by way of suggestion, was not intended nor should it be construed to reverse or trench upon an established position of our criminal law to which the learned and careful judge has often given his full adherence and well considered support. *S. v. Clyde Kennedy,* 169 N. C., 288.

In *S. v. Munn,* 134 N. C., 680, the facts of the case are not stated in the opinion, but, on examination of the original record, it appears that the court charged fully on the question of manslaughter, as favorable to the prisoner certainly as he had any right to ask, and no exceptions were made to the charge in this aspect of the case. And referring to the other cases cited in support of the conviction, in *S. v. Johnson,* 161 N. C., 264, there was no error in the charge as given, and it was held, *Associate Justice Brown* delivering the opinion: "That there was not a scintilla of evidence upon which a verdict of manslaughter could have been based." In *S. v. Teachey,* 138 N. C., 598, the same ruling was made: "That no element of manslaughter was presented." And on the facts in evidence the same position seems to be fully justified in *S. v. Bowman,* 152 N. C., 817. See *S. v. Chavis,* 80 N. C., 353. In none of these cases, therefore, is there direct decision that where the facts

of the case present the question of manslaughter a court is justified not only in omitting any and all reference to this feature of the charge, but in effect positively withdrawing its consideration from the jury.

Again, it is insisted for the State that there was not only no prayer for instructions presenting the view of manslaughter, but that a perusal of the record tends to show that the course of the trial, by which the consideration was restricted to the two degrees of murder, was not resisted, but acquiesced in by counsel for the prisoner.

It is held in many well considered cases that the rule denying reversible error for an omission to charge on a given phase of a cause does not prevail to the same extent in criminal as in civil cases, and there is high authority for the position that, in cases of homicide, a judge is required to charge the law correctly, even when contrary to the positions taken by counsel. *S. v. Stonum,* 62 Mo., 597; *Myers v. Commonwealth,* 83 Pa. St., pp. 131-143. In *Stonum's case* it was held, "That in all criminal cases it is the duty of the court to instruct the jury as to the law. If the instructions offered are objectionable, the court should proceed to give such as the law requires"; and in *Myers v. The Commonwealth, Paxson, J.,* concurring, said: "I hold it to be the duty of a judge, trying a man for his life, to charge fully upon the law applicable to the facts, and this without regard to points presented by counsel. The rule that a judge is not to be convicted for error for what he omits to say, unless his attention is called to the subject by a request to charge, is well enough for civil cases, but ought not, in my judgment, to be applied in a capital case. The prisoner has a right to have the jury properly instructed upon every question of law legitimately raised by the evidence. This right he cannot waive, nor can his counsel do so for him." And further, the authorities are at one in holding that, both in criminal and civil causes, a judge in his charge to the jury should present every substantial and essential feature of the case embraced within the issue and arising on the evidence, and this without any special prayer for instructions to that effect. Charged with the duty of seeing that impartial right is administered, it is a requirement naturally incident to the great office he holds and made imperative with us by statute law. Revisal, 535: "He shall state in a plain and correct manner the evidence in the case and explain the law arising thereon," and a failure to do so, when properly presented, shall be held for error. When a judge has done this, charged generally on the essential features of the case, if a litigant desires that some subordinate feature of the cause or some particular phase of the testimony shall be more fully explained, he should call the attention of the court to it by prayers for instructions or other proper procedure; but, as stated, on the substantive features of the case arising on the evidence, the judge is required to give correct charge concerning it.

*S. v. Foster,* 130 N. C., 666; *S. v. Barham,* 82 Mo., 67; *Carleton v. State,* 43 Neb., 373; *Simmons v. Davenport,* 140 N. C., 407.

In *Foster's case* the Court, among other things, held, that "(4) Admissions of counsel made on trial as to any fact or law will not be taken as true where it plainly appears that they are not true. (5) Where a person is convicted of murder in the first degree, it is error if the court failed to instruct as to murder in the second degree, even though counsel admitted defendant to be guilty of murder in the second degree. (6) On a prosecution for murder it is the duty of the trial judge to instruct as to murder in the second degree, even though no request is made therefor."

In *Barham's case, supra:* "It is the duty of the court to instruct the jury as to all grades of homicide to which the facts in evidence apply."

In *Carleton's case* the principle is very correctly stated as follows: "It is the duty of the court to instruct the jury on the law of the case, whether requested to do so or not, and an instruction or instructions which by the omission of certain elements have the effect of withdrawing from the consideration of the jury an essential issue or element of the case is erroneous; but when the jury is instructed generally upon the law, and when the instructions given do not have the effect above stated, then error cannot be predicated upon the failure of the court to charge upon some particular phase of the case, unless a proper instruction was requested by the party complaining." And in *Simmons v. Davenport, supra, Walker, J.,* said: "The rule which requires that a complaining party should ask for specific instructions if he desires a case to be presented to the jury by the court in any particular view does not, of course, dispense with the requirement of the statute that the judge shall state in a plain and correct manner the material portions of the evidence given in the case and explain the law arising thereon. Revisal, sec. 535."

In the case presented and under our statute, on a bill of indictment for murder, there may be a conviction of murder in the first or second degree, or manslaughter, as the facts may appear; and where, as we have seen, there is evidence tending to establish the crime of manslaughter, it is reversible error to exclude its consideration from the jury.

Defendant is entitled to a new trial, that the issue as to his guilt shall be properly submitted on the questions of murder in the first degree or murder in the second degree or of manslaughter.

On the record as it now stands, there are no facts in evidence tending to show self-defense.

In so far as the "tender of the plea of guilty of murder in the second degree is concerned," also urged against the prisoner, "it would seem to be a hard measure of justice that, after rejecting his plea and putting him on trial for his life, his offer should be used to deprive him of the right to have his cause tried according to the law of the land."

New trial.

ALLEN, J., dissenting: The prisoner has been convicted of murder in the first degree, and a new trial is ordered by the majority of the Court upon the ground alone that the evidence presents a phase of manslaughter, and that this was not submitted to the jury.

I cannot agree to this disposition of the case.

The record states that after the conclusion of the evidence, "the defendant, through his counsel, tendered the State a plea of guilty of murder in the second degree," and that the plea was rejected.

His Honor also charged the jury, in the presence of the prisoner and his counsel, and without any suggestion that he was stating the contentions of the parties incorrectly, that "In this case the defendant admits killing with a deadly weapon; that he intentionally shot the deceased with a deadly weapon, and that the deceased died from the wound. He contends that you ought to render a verdict of murder in the second degree. His counsel ask you to convict him of murder in the second degree, but they ask you not to convict him of murder in the first degree, because they contend that there is no evidence which would justify you in finding the killing was done with deliberation and premeditation."

There was no request to charge upon manslaughter.

It therefore appears that the case was tried by the State and the defendant upon the theory that the defendant was guilty of murder in the first or second degree, and that the defendant admitted that he was guilty of murder in the second degree; and, if so, a failure to charge on manslaughter was not prejudicial to the defendant.

The Court says, however, that this is an admission of law, and is not binding on the Court; but to my mind it is an admission of fact.

The distinguishing feature between murder in the second degree and manslaughter is malice, and no one knew so well as the prisoner and his counsel whether the killing was with malice or under passion caused by legal provocation, and as I understand the plea tendered and the admission, it was tantamount to saying that the prisoner killed the deceased maliciously and not from sudden passion; and this is a fact. *Foster's case,* 130 N. C., 666, so far from militating against this position, confirms it.

A new trial was ordered in that case because of the erroneous charge that flight was a circumstance to be considered on the question of premeditation and deliberation.

The admission of counsel that the prisoner was guilty of murder in the second degree is, I think, dealt with as an admission of fact, and binding, and the further error pointed out is not in failing to charge on manslaughter, but on murder in the second degree, which the Court says was necessary in order for the jury to understand the elements entering into murder in the first degree.

Again, I think the prisoner has not been prejudiced by the failure to charge on manslaughter because it is not conceivable that the jury would have convicted of manslaughter under the most favorable charge when counsel for the prisoner were asking them to convict of murder in the second degree, and when in response to that plea they said they were satisfied beyond a reasonable doubt that the killing was with premeditation and deliberation.

*Clark, J.,* says in *S. v. Munn,* 134 N. C., 681: "The point counsel wishes to present, though not excepted to, that there was error in the charge as to mitigation from murder in the second degree, would not be before us even if it had been excepted to, for the reason that the jury found, upon the very full and careful charge of the court as to the difference between murder in the first and second degree, that beyond all reasonable doubt the prisoner slew the deceased willfully, deliberately, and with premeditation, and was guilty of murder in the first degree. The State has thus satisfied them of facts raising the crime above murder in the second degree, which only was presumed from the killing with a deadly weapon. If there were error in the charge as to mitigation below murder in the second degree, it was therefore immaterial error."

*Walker, J.,* in *S. v. Lipscomb,* 134 N. C., 691: "But if there had been error in the instruction to which exception was taken, we do not see how the defendant could have been prejudiced thereby, for the jury found that he killed his victim intentionally and willfully and with premeditation and deliberation, and it could make no difference, with that fact found by the jury from the evidence, whether the presumption of the common law as to malice arising from the use of a deadly weapon had been rebutted or not. Prejudice could not come from such a charge, if erroneous, unless the defendant had been convicted of murder in the second degree and there had been evidence of facts or circumstances in mitigation or excuse of the killing. We have said there was none."

*Brown, J.,* in *S. v. Teachey,* 138 N. C., 597: "The prisoner excepts because the court failed to present to the jury in this connection a view of manslaughter. The prisoner was convicted of murder in the first degree, and we do not see how it was prejudicial to him because his Honor failed to charge the jury on the question of manslaughter. *S. v. Munn,* 134 N. C., 680; *S. v. Lipscomb, ibid.,* 689." *Walker, J.,* in *S. v. Bowman,* 152 N. C., 821: "The jury having found the actual facts to be that a conspiracy had been formed between the defendants, they will not be permitted now to aver that they killed the deceased in a heat of passion or upon a legal provocation, or for any other reason which would reduce the crime to the degree of manslaughter. It therefore follows logically that any error which the court may have committed in its charge, as to that offense, upon a hypothetical state of facts, which the jury, by their verdict, have repudiated, is immaterial and harmless, even if such

error was committed.  *S. v. Munn,* 134 N. C., 680."  *Brown, J.,* in *S. v. Johnson,* 161 N. C., 266, speaking of an exception to a charge on manslaughter: "As the prisoner was convicted of the greater offense of murder in the first degree, this exception is not material."

While it is true that in several of these cases it is said there was no evidence of manslaughter, the excerpts relate to failure to instruct on that degree of homicide, and the opinion of the Court in each is that such error is immaterial when the jury has convicted of the higher crime.

It is also doubtful if there is any evidence of manslaughter.  The prisoner was sitting in a building 30 x 60 feet, with a partition about the middle, when the deceased came in.  An altercation ensued, and the deceased either struck or shoved the defendant, and caused his cap to fall off.  No weapon was used and so serious damage inflicted.  The defendant left the front room and went to the rear of the building.  He returned immediately, picked up his cap, and said to the deceased, "That's all right.  I'll get you."  He went to the rear of the building, returned immediately with a gun, and saying to the deceased, "You are a G— d— s— of a b—!" fired the shot which caused the death of the deceased.

CLARK, C. J., concurs in this opinion.